LUIS ANTONIO MIRANDA, demandante y recurrente, *v.* EDITORIAL EL IMPARCIAL, INC., e IRIS MIERES DE AYUSO, ETC., ET AL., demandados y recurridos.

*Número:* R-69-281          *Resuelto:* 8 de febrero de 1971

*Héctor González Blanes,* abogado del recurrente; *Benjamín Ortiz* y *Adolfo Mieres Calimano,* abogados de los recurridos.

EL JUEZ ASOCIADO SEÑOR SANTANA BECERRA emitió la opinión del Tribunal.

Se trata de una acción de cobro de dinero y daños por incumplimiento de contrato. La Editorial El Imparcial, Inc., obtuvo los servicios profesionales del periodista Don Luis Antonio Miranda por contrato fechado 26 de julio de 1967, suscrito en representación de la Editorial El Imparcial por Don Antonio Ayuso Valdivieso como Presidente y Director.

El 24 de junio de 1968 se le dirigió al Sr. Miranda una comunicación firmada "Iris Mieres de Ayuso, Secretaria", informándole que ella había decidido dar por terminados sus servicios a dicha empresa, a partir de esa misma fecha.

Los hechos anteriormente expuestos dieron lugar a la presente acción interpuesta por el Sr. Miranda, demandante y recurrente, contra la Editorial El Imparcial, Inc., Iris Mieres de Ayuso, por sí y asistida de su esposo Antonio Ayuso Valdivieso y su sociedad de gananciales, y Clement Littauer, como demandados y aquí recurridos.

La existencia del contrato de servicios profesionales entre la Editorial El Imparcial y el Sr. Luis Antonio Miranda, en virtud del contrato de 26 de julio de 1967, fue admitida por todos y cada uno de los demandados quienes contestaron por separado la demanda.

Visto el juicio en los méritos, la Sala sentenciadora emitió su fallo en 29 de septiembre de 1969 en que declaró sin lugar la demanda. Al declarar sin lugar la demanda la Sala sentenciadora hizo las siguientes:

*"Conclusiones de Hecho*

1.—Editorial El Imparcial, Inc. es una corporación debidamente autorizada para hacer negocios en Puerto Rico. Publica diariamente, en San Juan, el periódico conocido como 'El Imparcial'.

2.—El demandante Luis Antonio Miranda es un conocido escritor cuyos méritos literarios han sido ampliamente reconocidos en los círculos intelectuales de Puerto Rico y cuyo prestigio trasciende los límites geográficos de nuestra isla. Es un periodista de experiencia. Ha estado relacionado con el periodismo en una u otra forma durante toda su larga vida.

3.—Para el año 1967 la corporación Editorial El Imparcial, Inc. tenía grandes dificultades económicas. La circulación del periódico que publicaba había decaído notablemente. En un esfuerzo por evitar el fracaso económico que se vislumbraba, representantes de la corporación hicieron contacto con el demandante Luis Antonio Miranda y le ofrecieron la dirección del periódico 'El Imparcial'.

4.—Hubo una serie de reuniones y consultas en relación con la posición que iba a ocupar el Sr. Luis Antonio Miranda en el periódico 'El Imparcial'. Finalmente, con fecha 26 de julio de 1967, se otorgó un contrato de servicios en el que compareció por la corporación demandada el Sr. Antonio Ayuso Valdivieso y el propio demandante.

5.—Conforme al contrato al cual antes hemos hecho referencia se nombró al demandante Subdirector del periódico y se constituyó una llamada Junta Editorial, la que de acuerdo con el contrato estaría integrada por su Director, su Vicepresidente Ejecutivo, la Secretaria de la corporación, y el propio

Luis Antonio Miranda, en su carácter de Subdirector del periódico. Esta Junta Editorial era la llamada a determinar la política y normas editoriales del periódico.[1]

6.—Para esta fecha el Director del periódico y dueño de todas las acciones de la corporación lo era el Lic. Antonio Ayuso Valdivieso. Durante el transcurso del juicio se menciona que él se encontraba enfermo y se insinúa que su enfermedad era de la mente. Sin embargo, ninguna de las partes hizo un verdadero esfuerzo por demostrar que para esta fecha el Sr. Ayuso Valdivieso estuviese incapacitado. Sí se ofreció en evidencia una resolución del Hon. Tribunal Superior de Puerto Rico, Sala de Caguas, fechada 1ro. de noviembre de 1968, en que se declara al Sr. Ayuso incapacitado mentalmente.[2]

7.—Durante el tiempo que el Sr. Luis Antonio Miranda actuó como Director del periódico 'El Imparcial', en ausencia del Sr. Ayuso, hubo un aumento en la circulación del periódico y en la venta de espacio para anuncios. Sin embargo, la situación económica de la corporación continuaba siendo desesperada. Como cuestión de hecho el Sr. Miranda no intervenía en el aspecto administrativo y no tenía conocimiento si en la publicación del periódico habían pérdidas o ganancias, ni aún sabía cual era el presupuesto de su departamento.

8.—La Junta Editorial en un periódico es la que realmente tiene a su cargo la dirección del mismo. El Director es el funcionario ejecutivo de la Junta Editorial. Cuando Luis Antonio Miranda comenzó a desempeñar sus funciones como Director del periódico esta Junta no se reunía. La misma fue convocada por primera vez cuando comenzó a trabajar para la demandada el codemandado Clement Littauer.

---

[1]A pesar de esta conclusión en el sentido de que esa Junta Editorial era la llamada a determinar la política y normas editoriales del periódico, la propia Sala sentenciadora determinó, en conclusiones de hecho adicionales, que mientras el Sr. Miranda ocupó el cargo no existió tal Junta Editorial. Se expresó así la Sala sentenciadora en la cuarta determinación de hecho adicional: "Que mientras el demandante ocupó el cargo, ni la Junta de Directores ni la Junta de Accionistas del Editorial El Imparcial, Inc. se reunió, ni existe acuerdo alguno según las actas de la corporación por la que se creara la mencionada Junta Editorial interesada por la Sra. Iris Mieres de Ayuso, siendo la única alusión de dicha Junta Editorial la contenida en la Carta-Contrato de fecha 26 de julio de 1967, a que el Tribunal se ha referido en sus anteriores conclusiones."

[2]Véase *Colón* v. *Tribunal Superior*, 97 D.P.R. 106 (1969).

9.—Como la situación económica del periódico 'El Imparcial' seguía siendo caótica el Sr. Antonio Ayuso Valdivieso nombró el 1ro. de junio de 1968 al Sr. Clement Littauer Vicepresidente Ejecutivo y Primer Oficial Ejecutivo (Chief Executive Officer) de la empresa.

10.—Desde antes del nombramiento del Sr. Littauer existían fricciones entre Luis Antonio Miranda y la Sra. Iris Mieres de Ayuso. Las dificultades surgían del hecho de que en ocasiones la Sra. Ayuso le hacía encomiendas a los redactores del periódico y el Sr. Miranda entendía que ésta era una indebida intromisión de la Sra. Ayuso con sus facultades y prerrogativas como Subdirector y Director en funciones del periódico.

11.—Luego del nombramiento del Sr. Littauer las dificultades aumentaron. Littauer le hizo saber a Luis Antonio Miranda que de acuerdo con una investigación por él practicada el periódico tenía una imagen de independentista y comunista y que eso perjudicaba la venta de anuncios del periódico. También tuvieron diferencias en cuanto a la selección de la noticia de primera plana.

12.—En 12 de junio de 1968 se convocó para una reunión de la Junta Editorial. El Sr. Luis Antonio Miranda estuvo ausente de la misma. Aparentemente por estar bajo la impresión de que esta reunión no iba a celebrarse. De haber asistido su acción se hubiese circunscrito a impugnar la legalidad de dicha Junta Editorial. El entendía que dicha Junta no podía constituirse legalmente, y que en todo caso no tenía autoridad alguna sobre el trabajo que hacía como Subdirector y Director en funciones del periódico.

13.—El Sr. Luis Antonio Miranda le escribió dos largas cartas a la Sra. Iris Mieres de Ayuso. Una el 10 y la otra el 19 de junio de 1968.[3] El Tribunal concluye como cuestión de

---

[3]El texto de cada carta es como sigue:

"10 de junio de 1968.

Sra. Iris Mieres de Ayuso,
Avenida Luchetti, Condado,
San Juan, Puerto Rico

Estimada amiga:

Como en razón al estado de salud de Antonio, usted ha optado por actuar en su nombre, imponiendo cambios que resultan opuestos a las ideas de éste, a la vez que perjudiciales a las empresas de EL IMPARCIAL

hecho que las mismas son ofensivas e irrespetuosas considerando la posición que cada uno de ellos ocupaban en la empresa.

14.—Con motivo de las cartas antes mencionadas el Sr. Luis Antonio Miranda fue suspendido de empleo y sueldo por el Lic. Antonio Ayuso Valdivieso el día 25 de junio de 1968.''

---

y violadoras del contrato por el que fui inducido a abandonar mis anteriores actividades para hacerme cargo de la dirección del periódico, he decidido dirigirle estas líneas, como le prometí, temeroso ya del desastre que presiento avecinarse, así como de la seria perturbación ocasionada a la labor que—contra los inconvenientes creados—he venido realizando. Además de la advertencia, acaso en tiempo aún, para corregir los males de, y legalizar la administración, el propósito que persigo con la presente es: (1) salvar mi posición como director de las tales actuaciones; (2) consignar formalmente la inaceptación mía a que se alteren e infrinjan las condiciones bajo las cuales accedí a dedicar mis esfuerzos a enderezar la marcha de esta empresa y traerla al nivel de altura periodística y de mejoramiento en que hallara la misma antes de la intervención suya (justificada ésta solamente, a su juicio, por la enfermedad e imposibilidad que afligen a Antonio, y que se han acentuado desde hace varios meses).

Huelga enfatizar, amiga Iris, el enorme desagrado que siento al verme precisado a hacer estas afirmaciones que, sobre su pertinencia directa en lo concerniente al interés en mi trabajo—y para hacer valederos mis derechos contractuales—suscitan controversias y planteamientos—a ser resueltos—de suyo sensibles, dado el entrañable afecto que le profeso a Antonio, a quien, naturalmente, sea dicho de paso, no cabe responsabilizar en forma alguna de lo que viene ocurriendo, ni de los crasos errores cometidos y con los que, aún lamentándolo, desearía poder contemporizar, en merecida deferencia a usted, si no mediaran el grave perjuicio que señalo y una complicidad de todo punto inadmisible para mí.

Trataré de ser más claro:

En las primeras conversaciones que sostuve con Clement Littauer, anticipé (y así se lo dejé saber a usted) que, de recibir éste el nombramiento de vice-presidente ejecutivo que usted interesaba conferirle (por creer que tal sería, o que era el deseo de Antonio) dicho señor pretendería ejercer poderes conflictivos con las facultades correspondientes a mi encomienda y con lo preconvenido al asumir yo la dirección del periódico. Estuve, así, en desacuerdo con sus ideas (inclusive la referente a la creación de una junta, presidida por él, para regir la Redacción e imprimirle a EL IMPARCIAL las modalidades que él tenía en mente). Exigí, por tanto, que, de llevarse a cabo su ingreso, no interfiriese con el desempeño de mis funciones, ni con el reconocimiento de las atribuciones sobre las que descansa básicamente mi contrato.

Recordará usted que al invocar inherencia [sic] en el asunto como portavoz de Antonio, convino que, en efecto, yo tenía razón y que el nombramiento aludido, de hacerse, no alteraría la política establecida por mí, ni intervendría con mi oficina, ni con el personal a mi cargo, continuando yo en el goce de la independencia que desde el principio reclamé y me fue

A base de esas conclusiones de hecho la Sala sentencia-
dora formuló las siguientes:

*"Conclusiones de Derecho*

I.—El Artículo 25 de la Ley de Evidencia es aplicable a los
hechos de este caso.

II.—El contrato escrito celebrado entre las partes el día 26
de julio de 1967 se presume que contiene la verdadera intención

otorgada al respecto. En tales condiciones se hizo el nombramiento, a pesar
de mi convencimiento de que, si algún sentir hubiera podido expresar
Antonio, no se habría hecho.

Como supuse, desde el comienzo del mismo, el señor Littauer se
arrogó poderes que pretextaba haberle conferido Antonio—cosa que, como
usted sabe, es imposible—y que confligen de lleno con aquellos que yo he
venido ejerciendo por virtud del entendido bajo el cual asumí la Dirección
real e inobstaculizada de EL IMPARCIAL a mediados del año pasado.

Como usted sabe, yo no solicité el cargo que ocupo. Antonio, personal
y voluntariamente fue a ofrecérmelo a mi casa, aduciendo que 'me nece-
sitaba para rescatar el periódico que durante su enfermedad le habían
robado'. Tales fueron sus palabras textuales.

En atención a su insistencia y a la vieja amistad que nos ha unido
por muchos años, acepté abandonar mi columna 'Observatorio Boricua'
que publicaba diariamente EL MUNDO y me avine a volver al lado de
Antonio, colaborando con él una vez más con la misma espontaneidad que
lo hiciera en numerosas ocasiones en el pasado. Su petición expresa y el
compromiso mío fueron de devolverle a EL IMPARCIAL sus características
de tribuna independiente y puertorriqueña al calor de los ideales que
agitaron sus luchas en el ambiente público.

Por ser algo entrañado en mi amistad hacia Antonio y en los senti-
mientos de mi conciencia, decidí compartir con él la Dirección de EL
IMPARCIAL, *sin otros jefes.* Y cuando al discutir mi contrato en la
oficina del licenciado Félix Ochoteco—donde estábamos presentes Antonio,
usted, Guillermo Cintrón Ayuso y yo—y proponerse que mi cargo fuera
el de Director del periódico, demandé que Antonio figurara como Director
y yo como Subdirector, en atención siquiera a ser él símbolo de su propia
empresa. En aquel momento Antonio arguyó que, en realidad, el Director
lo sería yo; pero insistí en que fuera él quien apareciera como tal, aunque
lo fuera nominalmente, cual todos convinimos sería.

Ambos requisitos—el de devolverle al periódico su independencia de
criterio, la fisonomía de su puertorriqueñidad, así como mi condición de
representante suyo (de Antonio) en tales propósitos—fueron causa o con-
sideraciones principales en la aceptación de la encomienda de Antonio,
porque ellas coincidían con mis convicciones, mis principios y anhelos
espirituales.

de las partes y no pueden considerarse las conversaciones celebradas entre las partes con anterioridad a su otorgamiento.

III.—La negativa del Sr. Luis Antonio Miranda a reconocerle autoridad a la Junta Editorial del periódico 'El Imparcial' equivale a un incumplimiento de contrato por su parte. Su conducta es equivalente a una actitud de insubordinación y desobe-

---

Como es meridianamente claro, el nuevo vicepresidente ejecutivo le injerta una inesperada e irreconciliable distorsión a la encomienda que recibí de Antonio y por la que acepté sacrificar mis esfuerzos, con gran amenaza y perjuicio de la labor constructiva en que me viniera afanando por llevar a cabo mi labor con grato reconocimiento del periodismo.

Los ingresos por anuncios, la circulación y las repercusiones favorables reconquistadas por EL IMPARCIAL en la opinión pública en los once meses que he estado dirigiendo el periódico, exponen los resultados ofrecidos a la empresa por la Redacción con sus esfuerzos de equipo y liderato. Otro asunto a destacarse es el referente a que EL IMPARCIAL cubrió y está superando este año, los $400,000 que dejó de ingresar por anuncios—a despecho de los que obtuvo en la campaña plebiscitaria para aquella fecha—precisamente cuando sufrió la desgracia de haber sido despojado de su propia personalidad.

De acuerdo con las motivaciones que me indujeran a aceptar la Dirección de EL IMPARCIAL—como hecho cierto—no puedo admitir, como se me quiere imponer por sorpresa, otra autoridad que no sea la de Antonio. No puedo admitir sobre los poderes de que fui revestido, ninguna mentalidad antagónica hacia los ideales puertorriqueños que defiende el periódico, al que irreflexivamente el mencionado vicepresidente ejecutivo le atribuye con gratuito daño 'una imagen comunista y nacionalista.'

Es obvio que mis responsabilidades como dirigente de la política editorial que le ha devuelto al periódico su fisonomía propia, tienen que rechazar toda intervención contraria que desvirtúe: (1) la historia respetable del periódico; (2) las convicciones e ideologías que vine a defender y preservar porque son las mismas de mi conciencia, y (3) la motivación que me indujo a convenir con Antonio en devolverle al periódico los atributos que fueron principios y objetivos de toda su vida.

Las intervenciones en desdoro de los principios que fueron causa básica de mi contrato van tan lejos como haber suprimido ya el señor Littauer, sin mi autorización ni mi consulta, una página editorial, varias columnas de colaboración habitual, dos páginas de la· Sección Social, dos páginas de la Sección de Deportes y varias otras secciones, sin medir siquiera el descrédito que pueden acarrearle tales supresiones y el daño a la circulación del periódico.

Con la súplica de que ponga de su parte para evitar el perjuicio que el actual conflicto produce, tanto al periódico como a mí, por razón de las violaciones aludidas, así como por la acción que me vea obligado a

diencia a las normas establecidas en el propio contrato y justifi-
can a su patrono en dar por terminado el mismo.

IV.—Las cartas dirigidas a la Sra. Iris Mieres de Ayuso,
considerando las imputaciones que en las mismas le hace, jus-.
tifican también que se dé por terminado el contrato de arrenda-
miento de servicios.

tomar para esclarecer mi posición, la suya y la del señor Littauer en este
enojoso asunto, quedo como siempre, cordialmente suyo,

LUIS ANTONIO MIRANDA."

· · · · · · · ·

"19 de junio de 1968

Sra. Iris Mieres de Ayuso
Secretaria Junta de Directores
Editorial EL IMPARCIAL, INC.,
San Juan, Puerto Rico, 00902

Respetable señora:

En mi carta del lunes (10 de junio) le exhorté desistir de perju-
dicar mis labores oficiales en EL IMPARCIAL, reseñando las infrac-
ciones cometidas, que ponen en peligro el destino de la empresa en sí,
y que anulan los efectos de mis esfuerzos por continuar mejorándola.

Al discutir usted conmigo los conceptos de mi carta, convino en la
seriedad de sus motivaciones y en la justificación de mis protestas, pro-
curando dejar en mi ánimo la impresión reconfortante de que corregiría
su proceder, y que, por tanto, 'daría por no recibida' dicha carta.

Percatándome tal no era solución alguna y temiendo que en su fes-
tinada apreciación omitía el importante requisito de no intervenir en,
o dejar de obstaculizar más mi trabajo, o de interferir con las personas
bajo mis órdenes, le hice nuevas admoniciones al respecto, advirtiéndole
mi firme decisión de mantener cuanto expresara en mi comunicación, pues
consideraba haber rebasado los límites de toda posible tolerancia. Puntua-
licé los daños que viniera causando el Sr. Clement Littauer, interesado
éste principalmente en especular—porque tal es su actividad básica—con
las propiedades de las empresas; y no, ciertamente, en la vida y desa-
rrollo feliz y permanente de éstas. Su ingreso en la redacción tenía que
confligir fundamentalmente con mis proyecciones y con mi encomienda,
muy distintas a las suyas, que tampoco coinciden con los objetivos que mi
nombramiento contemplara. Es diferente, la atención que se presta a un
negocio que se quiere vender, de la prestada para hacerlo crecer y am-
pliarlo. Al Sr. Littauer le interesa el comprador potencial, el financia-
miento del *realtor*, las comisiones, los cargos de cierre, la promoción, los
'negocios redondos' y el clima de actividad económica que le trajera hace
unos años a Puerto Rico. A mí me interesa el dinamismo de la empresa,
el lector, la circulación del diario, la calidad del mismo, la tranquilidad y
bienestar del personal que coopera, las preocupaciones de mi pueblo y su

V.—La conducta observada por Clement Littauer y la Sra. Iris Mieres de Ayuso, considerando todas las circunstancias, no puede ser considerada como una conducta dirigida a causar daño al demandante y sí más bien como diferencias honestas de criterio en cuanto a la forma de conducir un negocio."

destino, el mérito de la academicidad, del saber y las ideas. Yo nací y vivo aquí, donde espero morir, en el bregar de las faenas que han dado humilde sustento a mi familia y a mí. Somos dos polos opuestos. Yo *jamás* hubiese aceptado la dirección de EL IMPARCIAL, junto a una persona de pensamientos como los suyos. Tampoco Antonio, de haber sido ésa su elección. Y usted lo sabe.

Usted y Littauer están empeñados en una venta y liquidación de EL IMPARCIAL, y éso mantiene a la Empresa y a su numerosa empleomanía en un estado de indecisión, de zozobra y desmoralizadora incertidumbre.

A mí me trajo *la Empresa*—no usted—para rehabilitarla y ponerla en posición de cumplir los fines para que fuera creada, bajo un contrato cuya efectividad no depende, *ni puede jamás depender*, de ninguno de ustedes dos. Mi trabajo, mis aspiraciones en bien del periódico, y mi dedicación, constituyen un estorbo y carecen de importancia para ustedes. Ni usted ni Littauer están interesados en ésto. Según la tesis de este señor, el periódico no necesita planas informativas, y debe economizar papel. Sólo anuncios para mantenerse, provisionalmente—y hasta que se dé el golpe de venta—como un poste de carteles. (Las personas se anuncian, leen las noticias en los periódicos que se compran. Un periódico lleno de anuncios no se vende). XNadie [*sic*] tiene duda sobre por qué trajo usted a Littauer a EL IMPARCIAL y, de haberla tenido, él se ha encargado de disiparlas con sus viajes para promover ventas. Es tiempo que se entiendan estas verdades, O NO HABRA MAS EL IMPARCIAL? como medio de información, vehículo de expresión y objeto de satisfacción y orgullo para el país. Ni usted ni el Sr. Littauer podrán percatarse, porque no interesa a vuestros proyectos, que EL IMPARCIAL esté al servicio de nuestra comunidad para fines muy superiores al de contener clasificados y anuncios (que sólo interesan a una clase pequeña de nuestro pueblo). No se puede ponderar suficientemente la gravedad y la *enorme importancia* de todo este cuadro. Sólo me referiré a algunas de sus consecuencias:—

Su conducta y la de su consejero particular han ocasionado que en el curso de este mes nuestro órgano publicitario, que fuera uno de primer orden en la isla, haya sido desfigurado a ediciones raquíticas que descienden a competir, escasamente, con EL DIA.—se ha hecho la supresión de un número importante de páginas de información general, de columnas colaboradoras y de aspecto sociales y deportivos, de gran arraigo y demanda pública—. Esta última acción, a más de no responder honestamente a las expectativas del pueblo que compra *y paga* por un periódico informativo, es de tal índole lesiva que dá casi motivo a sospechar ser el producto de un plan deliberado para crear su propio descrédito. No sólo se elimina ya

Posteriormente, en 2 de octubre de 1969 a solicitud del demandante Sr. Miranda, la Sala sentenciadora hizo las siguientes:

*"Conclusiones de Hecho Adicionales*

1.—Que desde fines del año 1960 hasta el 27 de febrero de 1964 el demandante había trabajado para El Imparcial de-

de un todo la imagen espiritual de Antonio (que me afané en conservar, por ser él el dueño y no haber muerto aún), al extremo vejaminoso de sustituir su nombre por el de Clement Littauer en el membrete relativo a la DIRECTIVA—relegando el de aquél tristemente a la cola de la lista, con el título, que con el cambio resulta una burla irónica, de Presidente— si que se pone inusitado esfuerzo por destruir su obra de tantos años de amarguras y dedicación. La defensa de esa obra fue causa esencialísima en el contrato que firmé y razón por la que el Lic. Félix Ochoteco—quien sugirió mi nombramiento e insistió que lo aceptara—y el entonces presidente en funciones, Sr. Guillermo Cintrón Ayuso, contrataron mis servicios por el término de 6 años.

El pasado miércoles (día 12 de junio de 1968) recibí una convocatoria suya—como Secretaria de la JUNTA DIRECTIVA—, citando a una llamada reunión de la *NUNCA CONSTITUIDA* 'JUNTA EDITORIAL EL IMPARCIAL', a la que concurrirían, según su contenido, los señores ANTONIO AYUSO VALDIVIESO, usted, Littauer y un servidor. Además, según supe luego, hizo citar a los señores José Luis Núñez y Santiago Gálvez Maturana.

ME PROPUSE ASISTIR A ESA REUNION para, sobre impugnar su legalidad, por las mismas razones que una vez expusiera el Lic. Félix Ochoteco—y que eran de conocimiento suyo—consignar en el ACTA de la misma (si alguna levantaba usted como secretaria) la posición ya asumida por mí en la carta que dirigiera a usted el día 10 (copia de la cual, para evitar repeticiones y equívocos, uno a la presente). Usted, *sua aponte*, había fijado las 4 p.m. del día siguiente (o sea, el jueves, día 13 de junio de 1968) para la celebración de este acto.

Momentos antes de la hora señalada, usted vino alarmada a mi oficina a discutir mi posición y lo que habría yo de decir en esa reunión. Expresó su deseo que silenciara lo que había consignado por escrito 'para evitar excitar a Antonio contra Littauer'. Vista la firmeza de mi negativa y no serme posible acceder a su petición, me indicó entonces, con enfado, que la reunión no se celebraría, pero que quería hacerme claro que usted seguiría los consejos de Littauer, cual, desde luego, reconozco ser su derecho individual, siempre y cuando, naturalmente, no intervenga con, ni derrote, los derechos que yo a mi vez derivo de mi contrato y de mi posición en la empresa.

Ha sido motivo de sorpresa para mí enterarme después que, ese día, a pesar de lo que me había anunciado, procedió usted a celebrar, a espaldas mías, la reunión y que en ella hizo manifestaciones contrarias a la rea-

sempeñando el cargo de Sub-Director el cual renunció debido a las intervenciones del Sr. Armando Cosme, entonces Administrador, así como a las diferencias existentes entre él y dicho señor, quien, a su vez, posteriormente, cesó como tal Administrador.

2.—Que al solicitarse de nuevo los servicios del demandante, a fin de que éste aceptara el cargo de Director del periódico El Imparcial, allá para el mes de julio de 1967 se celebró una

lidad tal como que yo le había pedido a usted ser excusado y diciendo o creando la impresión de que estaba de acuerdo con cuanto usted y Littauer propusieran. Todo ello en presencia de Antonio, quien en todas ocasiones, a pesar de su desvalidez, se muestra cordial y animado en mi presencia y su disgusto por Littauer. Parece que usted y Littauer al actuar así 'para no excitar a Antonio' perdieron de vista, en la irresponsabilidad de ese acto, que me estaban atribuyendo una acción que, por fortuna, está enérgicamente desmentida en la carta que le cursé y que usted recibió días antes—o sea, la carta del día 10—que adhiero, con especial empeño, a ésta. Usted debió pensar que su conducta, aconsejada o no por otra persona, fue impropia y que sólo engendraría indignación, como suele producirle el subterfugio. Tan fuera del cuadro, y exento de toda culpa en ésto, está Antonio, como su relegación triste en el clisé informativo antes mencionado. En adición, pues, a las muchas horas de labor y a las reiteradas complicaciones que el desarreglo traído a la Redacción produce, me causa Ud. el sacrificio adicional de tener que robar horas a un merecido descanso para escribir estas cuartillas, en evitación de nuevas intrigas y del asedio que tanto mal sabor y decepción producen.

Revistiéndome, sin embargo, de gran paciencia, me veo forzado a comunicar a usted mi natural protesta, mi sentir y convicción en conexión con la indicada reunión, solicitando, así también, como Director, que, además de incorporar esta carta como parte de la minuta que de esa reunión ha preparado, o intente preparar usted, se guarde, para referencia, la copia carbón que también acompañó en los archivos oficiales de la Corporación.—Ambos documentos, así como el Anexo, consistente de una copia de mi carta del día 10, se envían por correo certificado, con acuse de recibo.—Remito, también, una copia a todos los concurrentes a ese acto, salvo, desde luego, a Antonio, cuya mente confusa, lejos está de entender lo que está pasando.

Van, pues, mis observaciones al carácter de, y a lo tratado—según se me ha informado—en esa reunión:—

1.—En primer lugar, la amistad y el afecto que siempre he sentido por Antonio, me obligan a rechazar la forma en que desde hace tiempo se viene aprovechando su invalidez y estado para usurpar los poderes que corresponden a la presidencia. Usted, mejor que nadie, sabe que, de estar capacitado Antonio, el Sr. Littauer no hubiera durado un segundo en la redacción. De todas formas, y aun cuando tal no fuera el caso, es muy penoso ver a Antonio expuesto continuamente a situaciones, que por no entenderlas y por la deplorable condición de su mente y la agravación de

conferencia en las oficinas del Lcdo. Félix Ochoteco Jr., a cuyo acto asistieron, además de dicho abogado, los señores Guillermo Cintrón Ayuso, el Sr. y la Sra. Ayuso Valdivieso y el demandante, acordándose en dicha reunión, que la Junta Editorial, cuya constitución allí sugiriera la Sra. Ayuso, no sería creada por los impedimentos de que viniera adoleciendo el Sr. Antonio Ayuso Valdivieso y, además, que para que no se repitiesen los

---

sus nervios, le conducen con frecuencia, de un estado de sumisión y placidez, a explosiones incoherentes, que deben evitarse siquiera sea en bien suyo. Son escenas que, lastimosamente, el producirse, sólo enfatizan la farsa que se intenta ocultar.

2.—Al proponérseme el nombramiento de Director que por consejo del Lic. Ochoteco, me proponía al Sr. Guillermo Cintrón Ayuso, y que finalmente acepté a instancias de ambos y con gran alegría de Antonio, exigí la ratificación y aclaración formal del contrato por el Presidente Ejecutivo en funciones, Sr. Guillermo Cintrón Ayuso,—que exigiera también de él antes en reunión previamente celebrada en el bufete del primero (a la que concurrieron, además de ellos dos, usted y Antonio)—, siendo causa y condición del contrato—cual a usted le consta—evitar precisamente los actos que después del fallecimiento del Lic. Ochoteco viene usted realizando con más aplicación que nunca. Cintrón Ayuso, quien por inhabilidad de Antonio ocupara la Presidencia, y usted misma, reconocieron mi designación y facultades como Director, y para actuar *sin intervención* de ninguna otra persona o jefe, y con preservación—por ser mi deseo—del símbolo que para el periódico creado por él—y por los ideales que él defendiera—significaba el continuar figurando, siquiera nominalmente—puesto que de otro modo no era posible—, como el Director, que corazón adentro, siempre fuera. Para mí, por la lealtad que debo a mis principios y convicciones—parte también del ser humano y de la felicidad—esa exigencia mía no fue un mero arranque de sentimentalismo, si que una manera incuestionable de evitar cambios durante mi incumbencia que pudieran confligir con mi ideario, conocidos de todos por muchos años, como Director y como Editorialista. Mi intransigencia en ésto se conocía, e hice patente que por el término de mi contrato no habría de variarse y que nadie intervendría conmigo, ni con el personal a mi cargo. Fue entendido así claramente que, por el término de seis años, cuando menos, el cargo de Director me pertenecía y yo desempeñaría, cual pasé a desempeñar sus funciones. En esas condiciones, repito, habría de trabajar, sin ningún jefe, con el mando y control de los empleados correspondientes al Director y sin que se pudiera variar la personalidad y fisonomía del periódico por la Administración, ni por persona alguna.

3.—Era igualmente mi propósito consignar en dicha reunión, conforme ahora lo hago, mi protesta al nombramiento e intervención ilegal del Sr. Littauer. Para evitar conflictos con usted, y en el claro entendido entonces de que en modo alguno el ingreso de este consejero particular suyo perturbaría mi trabajo y funciones, me abstuve de insistir en mi

actos que habían obligado al Sr. Luis Antonio Miranda a renunciar anteriormente, ni la Sra. Ayuso, específicamente, ni ningún director particularmente intervendría con el demandante en el desempeño de sus funciones como director.

3.—Que después de celebrada dicha reunión el día 24 de julio de 1967 luego de entrevistarse con el presidente de la corpora-

protesta a la ilegalidad *ab initio* del nombramiento que, desautorizadamente, usted le hiciera, y al que pretendió añadir el inexistente e inventado título de PRIMER OFICIAL EJECUTIVO, ya que al retirarse Cintrón Ayuso, la ADMINISTRACION quedaría acéfala. Todo iba enderezado, conforme se hace claro, a hacer mi estada en EL IMPARCIAL lo más molesta y desagradable posible, a poder empezar a funcionar usted, cual funciona, como si fuera ya la dueña de la empresa, controlando la misma y todas las atribuciones de los empleados entre usted y el Sr. Littauer.

4.—Por estos medios se trataría de hacer lo que legalmente no es posible a ninguno de los dos—sin antes incapacitar a Antonio, con la protección legal, en tal caso, de todos los interesados, y mediando de así hacerse la correspondiente intervención judicial que protegería principalmente los intereses del incapacitado. En relación con este aspecto, quiero recalcar que como yo me negara a la complicidad de dar una falsa impresión sobre la pretendida autoridad de Littauer, ustedes dos hicieron publicar en otros *media* noticiosos, con gran despliegue, el alegado nombramiento del llamado 'PRIMER OFICIAL EJECUTIVO', acompañado de una elogiosa nota que usted particularmente preparó de su puño y letra y que atribuyó a Antonio.

5.—Finalmente, *debo impugnar* la legalidad de la *mencionada* JUNTA EDITORIAL DE EL IMPARCIAL, que el vice-presidente ejecutivo, Sr. Guillermo Cintrón Ayuso *nunca* constituyó, ni es legal constituir debido a la incapacidad de Antonio. Según aconsejó el Lic. Ochoteco, la constitución o formación de esa Junta no debía intentarse mientras existiera la situación de Antonio, debiendo dilatarse, o posponerse la misma, hasta que desaparecieran los fundamentos de esa objeción, o se incapacitase legalmente a Antonio. Huelga considerar que si dicha JUNTA EDITORIAL no es legalmente posible, mucho menos puede ser la creación, por ella, de una subjunta o comité. Además, repito, siendo ilegal el nombramiento de Littauer, y considerada la deformación de la estructura corporativa de EL IMPARCIAL, no es concebible que entre él, Antonio—que está imposibilitado—y usted puedan crear una Junta para 'escoger temas editoriales, informaciones, fotografías, títulos, etc.' y vulnerar y anular de esa forma irrisoria y absurda mis atribuciones de Director, con miras, tal vez, a promover mi renuncia, por la fuerza y el asedio, y destruir el desempeño de mi encomienda en favor de la salud de EL IMPARCIAL. Tal vez ustedes *no se percatan por qué fué* que los Señores Ochoteco y Guillermo Cintrón Ayuso insistieron en que yo hiciera el compromiso que hice y el que me siento obligado a defender como una cuestión legal y de conciencia. Son muchas las cosas que en vuestra faena de liquidación y lucro

ción, Sr. Héctor Cintrón Ayuso, tomó posesión de su cargo el demandante y empezó a desempeñar sus funciones bajo el título de sub-director.

4.—Que mientras el demandante ocupó el cargo, ni la Junta de Directores ni la Junta de Accionistas del Editorial El Imparcial Inc. se reunió, ni existe acuerdo alguno según las actas

---

espectacular ustedes pierden de vista.

Así pues, por resultar ilegales y perjudicial a mis derechos y encomienda, todas las actuaciones a que arriba menciono, he decidido tomar la acción judicial procedente. Para tal fin solicitaré los servicios del Lic. Héctor González Blanes. Lo elijo a él por dos razones: 1a.—porque el Lic. Félix Ochoteco, abogado por muchos años de EL IMPARCIAL, y quien tuviera conocimiento directo de mi posición al ser nombrado a sugerencia de él y conocer el desarreglo funcional por la intervención suya, se sintió en la obligación de no dejarme desamparado y, previsor cual era, me refirió a dicho abogado, al saber yo, poco tiempo después de ser nombrado, las gestiones que se estaban haciendo para vender las Empresas; y 2a.—porque debido a la desinteresada ayuda legal que el Lic. González Blanes accediera a dar a Antonio Ayuso en momentos cruciales de su vida, y por la buena amistad que siempre ha unido a ambos, él podrá juzgar mi posición con mayor deferencia para usted—cual siempre ha sido mi deseo—y hacer lo menos enojoso la ventilación en corte de estas diferencias y del daño que vuestras actuaciones, y la situación creada en EL IMPARCIAL, me ocasionan.

Huelga recalcar que doy este paso porque usted y Littauer no me han dejado otra alternativa y porque las últimas actuaciones suyas hacen ya completamente claro vuestro propósito de cerrarme todos los caminos y ahogar mis derechos, al extremo de procurarme ahora el mal rato, enojo y gastos de un litigio que ante la protesta de agradecimiento—que aún suena en mis oídos—, y con vista de mi labor en marcadísimo beneficio del periódico, no se hace concebible.

Atentamente,
(Fdo.) LUIS ANTONIO MIRANDA

Copias carbón de esta carta
y de carta 6/10/68.

P.D. Cuando me disponía a enviar la anterior carta recibí su llamada telefónica invitándome a ir a su casa. Creí conveniente consultar al Lic. González Blanes, a quien solicité acompañarme, lo que hizo después de telefonearle a Ud. y pedir su conformidad. En esa entrevista que se celebró estando Antonio acostado en una butaca quedaron confirmados, como siempre, dos hechos: que Antonio, quien sólo responde a emociones y recuerdo de amistades, mostraba además enojo cuantas veces habláramos de Littauer y alegría cuando se enfatizaba la necesidad de ser yo quien siguiera en la redacción, y, segundo, que dada su condición y las palabras suyas se hizo evidente que Ud. es quien quiere decir y que los deseos o gustos de él no cuentan.

de la corporación por la que se creara la mencionada Junta Editorial interesada por la Sra. Iris Mieres de Ayuso, siendo la única alusión de dicha Junta Editorial la contenida en la Carta-Contrato de fecha 26 de julio de 1967, a que el Tribunal se ha referido en sus anteriores conclusiones.

5.—Que durante los tres primeros meses en que el demandante efectuó sus labores la Sra. Ayuso no intervino con él, ni con las funciones de éste; pero, pasados los mencionados tres meses comenzó a intervenir con los redactores bajo la dirección del demandante y en la labor de la dirección, dando motivo a que el demandante protestara de dicha intervención tanto ante ella como ante el Vice-Presidente Ejecutivo, Sr. Guillermo Cintrón Ayuso y el presidente, Sr. Héctor Cintrón Ayuso.

6.—Que la demandada justificaba sus intervenciones por considerar que ella era esposa del Sr. Ayuso Valdivieso y era por tanto dueña también de la empresa y además en su condición de secretaria.

7.—Que la Sra. Iris Mieres de Ayuso tuvo una activa intervención en llevar al Sr. Littauer al Imparcial habiendo ella redactado de su puño y letra la documentación relativa al nombramiento de éste y tuvo asimismo una intervención efectiva en el despido del demandante.

8.—Que con posterioridad a haber sido removido el demandante de su cargo la demandada Iris Mieres de Ayuso gestionó y obtuvo la incapacitación legal de su esposo Antonio Ayuso Valdivieso y fue nombrada tutora de éste por el Tribunal Supe-

---

El licenciado González Blanes, con quien cambié impresiones luego, convino a su vez conmigo que Antonio sólo responde a recuerdos de mi sincera amistad con él, a emociones a veces plácidas y otras veces videntes cuando se me quiere relegar, pero que no puede hacer análisis alguno de ningún negocio, sintiéndose sumamente alarmado e inconforme. Como estoy convencido por la reiterada actitud ser su intención perjudicarme y llevar a cabo sus planes con Littauer (que ciertamente no son salvar la empresa) ello así por mucho esfuerzo que ponga en crear una impresión contraria en reuniones que fundamentalmente carecen de objetivos prácticos, me reafirmo, con mayor convicción en todo lo antes dicho.

Se remiten copias, por correo certificado a las siguientes personas:—
1.—Sr. Clement Littauer—Editorial El Imparcial Inc., Apartado 2792, San Juan, P.R. 00903.
2.—Sr. Santiago Gálvez Maturana—Editorial El Imparcial Inc., Apartado 2792, San Juan, P.R. 00903.
3.—Sr. José Luis Núñez—Editorial El Imparcial Inc., Apartado 2792, San Juan, P.R. 00903."

rior de Caguas, habiendo testificado ante dicha Corte que el Sr. Antonio Ayuso Valdivieso no podía trabajar."

A solicitud del demandante, la octava conclusión de hecho anterior fue emitida por la Sala en 9 de octubre de 1969 haciendo constar que el Sr. Ayuso Valdivieso "no podía trabajar desde 1965."

No obstante la naturaleza de estas conclusiones de hecho adicionales, no se formularon nuevas conclusiones de derecho, ni se alteraron o modificaron las que se habían previamente expresado y que dejamos transcritas.

En este recurso el demandante-recurrente imputa la comisión de los siguientes errores:

*"Señalamiento de Errores*

1—Erró el Hon. Tribunal *a quo* al resolver que las cartas de 10 y 19 de junio de 1968, planteando al demandante su querella e invitando a la demandada a no violar su contrato, así como anunciando ser su propósito dilucidar el asunto en los tribunales, cual es lo propio, constituye un acto de insubordinación, o uno que justifica la terminación del contrato existente entre el demandante y la demandada Editorial El Imparcial.

2—Erró el tribunal *a quo* al concluir que el planteamiento hecho por el demandante sobre la ilegalidad de la llamada 'Junta Editorial', que se acordara no constituir mientras subsistiera la condición de incapacidad que aquejara al Sr. Antonio Ayuso Valdivieso, constituía motivo para su despido.

3—Erró el tribunal *a quo* al resolver que eran inadmisibles las cartas dirigidas al demandante por el Vice-presidente Ejecutivo de Editorial El Imparcial, Inc. con fechas 22 de junio de 1967, 3 de diciembre de 1967, 1 de marzo de 1968 y 14 de mayo de 1968, copia de las cuales se unen al legajo que se acompaña a este escrito.

4—Erró el honorable tribunal *a quo* al negar la presentación de prueba sobre la razón por la que la demandada interesaba crear perjuicios al demandante, así como evidencia de *rebuttal,* consistente en la declaración del Sr. Guillermo Cintrón Ayuso sobre que el día 26 de julio en que declarara ella haberse celebrado la reunión en la oficina del Lic. Félix Ochoteco, aquél se encontraba desde hacía 4 días en España.

5—Erró el honorable tribunal *a quo* al no conceder la conclusión adicional de hecho solicitada por el demandante al efecto de que cuando el Sr. Littauer concurrió a la primera reunión en mayo de 1968, para hablar con la Sra. Ayuso, estaba presente, en dicha reunión, el Sr. Armando Cosme y, además, que las intervenciones del demandado Clement Littauer con las actividades del demandante, así como sus imputaciones, se llevaron a cabo, durante el mes de mayo, sin que dicho demandado ostentase nombramiento o título de cargo alguno en El Imparcial, prueba ésta material al establecimiento de la conspiración entre la Sra. Ayuso y él para entorpecer y crear dificultades al demandante y para forzar nuevamente su cesación.

6—Erró el honorable tribunal *a quo* al no conceder al demandante el debido procedimiento de ley durante el juicio y en la consideración y decisión de su causa."

■ Hemos considerado detenidamente la vasta prueba documental y testifical en el récord, y estamos convencidos que las determinaciones de hecho que hizo la Sala sentenciadora, tanto las originales como las conclusiones adicionales, están ampliamente sostenidas por la evidencia, con excepción de la conclusión legal a que llegó la Sala sentenciadora en su determinación de hecho número 13 original, relativa a las comunicaciones de 10 y 19 de junio de 1968 dirigidas por el Sr. Miranda a la Sra. Iris Mieres. Tratándose de prueba documental este Tribunal está en igual posición que la Sala sentenciadora para determinar el efecto legal de la misma.

El recurrente discutió globalmente esos señalamientos en su alegato. Trataremos los mismos por su orden de exposición.

—I—

El 24 de junio de 1968, la señora Iris Mieres, como secretaria de la Editorial El Imparcial, Inc., decide, por su cuenta, invalidar el contrato de servicios profesionales entre esa corporación y el recurrente que vencería el 28 de julio de 1973. La única razón que motivó tal decisión personalísima de ella, según su comunicación de aquella fecha, con-

sistió en que el señor Miranda, en su carta del 19 de junio de 1968 se expresó en los siguientes términos:

"Así pues, por resultar ilegales y perjudicial a mis derechos y encomienda, todas las actuaciones a que arriba menciono, he decidido tomar la acción judicial procedente. Para tal fin solicitaré los servicios del Lic. Héctor González Blanes."

Ella no consideró ofensivas ni irrespetuosas las dos cartas del señor Miranda. El texto de las mismas debe considerarse a la luz de todo lo sucedido con anterioridad a las mismas, que en parte se relata en esas cartas y en lo demás aparece revelado por la transcripción de evidencia.

El propio juez sentenciador, en la segunda de sus conclusiones de hecho originales,—véase pág. 603 que precede— se expresó en forma elogiosa respecto al demandante, refiriéndose a él como "un conocido escritor cuyos méritos literarios han sido ampliamente reconocidos en los círculos intelectuales de Puerto Rico y cuyo prestigio trasciende los límites geográficos de nuestra isla. Es un periodista de experiencia. Ha estado relacionado con el periodismo en una u otra forma durante toda su larga vida."

De la declaración en juicio prestada por la señora Mieres, durante el 22 de julio de 1969, que figura a las págs. 75 y 76 de la transcripción de evidencia correspondiente a ese día, tomamos lo siguiente:

"LCDO. BLANES:

P. ¿Cuáles han sido sus relaciones con el Sr. Miranda cuando él estaba en El Imparcial?

R. Muy cordiales.

P. ¿Siempre?

R. Siempre.

P. ¿No hubo ninguna diferencia entre ustedes?

R. En absoluto.

P. ¿Cómo se conducía él con usted?

R. Como todo un caballero.

P. ¿Cómo?

R. Como todo un caballero.

P. O sea, que don Antonio Miranda es una persona cortés, amable.

R. Siempre.

P. ¿Usted no tenía querella ninguna contra don Luis Antonio Miranda?

R. Absolutamente ninguna.

P. ¿Usted intervino en la remoción del Sr. Luis Antonio Miranda?

R. Sí, señor, en parte sí."

Existen dos cartas, entre otras, que fueron ofrecidas como evidencia, escritas poco antes del despido, al señor Miranda por el Lic. Guillermo Cintrón Ayuso, Vicepresidente Ejecutivo de la corporación y cercano familiar del esposo de la señora Mieres de Ayuso, que arrojan la luz necesaria para comprender adecuadamente los honestos fines y propósitos de las dos cartas del demandante a ella. En aquellas cartas ese Vicepresidente y familiar cercano se expresó así:

"Editorial EL IMPARCIAL
Guillermo Cintrón Ayuso
Vicepresidente
Ejecutivo

CONFIDENCIAL

Marzo 1ro. 1968

Sr. Luis Antonio Miranda
Sub-Director
Editorial El Imparcial, Inc.
San Juan, P.R.

Querido Luis Antonio:

En conexión a lo hablado ayer y las conversaciones que está sosteniendo Iris sobre la venta de las empresas de El Imparcial, para tu mayor seguridad, quiero ratificarte por escrito lo siguiente:

1.—Que esa venta no se hará posible sin incapacitar antes legalmente a Antonio, cosa que no creo probable pues me temo que éste ya no dure mucho. Además a Iris no le convendría dar ese paso, pues haría evidente la irregularidad de sus actos, a

menos que los ratifique un tribunal, a donde también podrás ir a aclarar tus derechos bajo tu contrato, si es que quieres seguir trabajando y los compradores no se avienen a dichas condiciones.

2.—Que en caso de consumarse dicha venta, las empresas de El Imparcial que yo presido, están obligadas a compensarte plenamente por la descontinuación del contrato. La elección es tuya e Iris lo sabe.

3.—Que cualquier indicación, o cambio que a tu juicio, altere este contrato o cualquiera de sus disposiciones, o condiciones acordadas por nosotros, inclusive la de ser tu posición aquí una enteramente independiente y sin sujeción a ningún jefe sobre tí en lo que a la dirección del periódico se refiere, te dará derecho a reclamar y recibir como compensación acordada el importe de tus sueldos mensuales por el tiempo que reste hasta cubrir los seis años.

4.—Que la creación de la Junta Editorial con que Iris amenaza para violación de contrato, no es posible por la incapacidad de Antonio cosa que te informó Ochoteco haberle dicho. Tampoco permitiremos que siga interviniendo con tu personal para crear dificultades, ni de que se formen juntas ni comités con éstos.

5.—Que la empresa y yo así como los familiares de Antonio preocupados por su bienestar, te agradecemos siempre grandemente los resultados alentadores, de tu dedicación, sacrificio y trabajo, siendo mi propósito cumplir la promesa de que se te pague una bonificación extra por tus valiosos servicios y por el aumento que habrá en los ingresos de las empresas a fin de año.

Creo y espero que las seguridades que aquí te doy a nombre de las empresas y a tenor de lo recomendado por Ochoteco con quien he tratado extensamente este asunto y cuanto aquí te digo, reaseguren plenamente tus derechos. Vé a verlo de nuevo si te sigue molestando. El te aprecia y distingue mucho.

Tuyo cordialmente,

(Fdo.) Guillermo Cintrón Ayuso

GUILLERMO CINTRÓN AYUSO
Vice Pres. Ejecutivo"

GCA/gmca.

*"CONFIDENCIAL*

14 de mayo de 1968

Sr. Luis Antonio Miranda
Sub-Director
Editorial El Imparcial, Inc.
San Juan, Puerto Rico
Querido Luis Antonio:

Por mi memorándum de esta misma fecha estarás enterado que he decidido retirarme de El Imparcial. Lo hago con gran pena, pero la intención obstinada e ilegal de Iris desgraciadamente no me deja otra alternativa. No puedo llevar el asunto a los tribunales por razones de familia que tú conoces. Mi mayor sino mi única preocupación ahora, al tomar este paso, eres tú. Sé en la olla de grillos que te dejo. Luis Polo está interviniendo en favor de Iris y estoy seguro hará lo posible por evitar los pleitos. De todas formas es una desgracia doblemente mayor para todos la desaparición de Ochoteco (QEPD), pues Iris lo respetaba porque sabía la reacción que produciría en Antonio si no lo hacía, y además él conocía toda la situación. Para mí, continúa siendo incomprensible la actitud de Iris, a menos que esté interesada por algún motivo en llevarnos a la quiebra. Nuestros esfuerzos, compensados con el progreso de los negocios, en vez de agradecerlo la llevan a crearnos más obstáculos.

He hablado con González Blanes sobre este asunto y él se muestra remiso a intervenir por no tener líos con Iris pero me consta que Ochoteco le recomendó mucho tu asunto al tratarse las proyectadas operaciones de venta. Ya Iris, faltando Ochoteco, no es de confiar.

Huelga testimoniarte mi aprecio y hondo agradecimiento, aunque me voy sin disfrutar del éxito que con tantos desvelos anhelaba. Me voy así con la decepción que has de suponer. Son muchos los años que dediqué a estas labores. Abandoné mi clientela, y me alejé de mi profesión. Ya empiezan a contar los años y no es tan fácil empezar con los bríos de antes. Pero valga todo por mi cariño a Antonio, aunque por desgracia, desde hace años no tiene la mente ni el espíritu para entendernos. Ya su vida es una meramente vegetativa y controlada por cualquiera que le ofrezca protección. Iris lo puede irritar o lo puede apaciguar; lo lleva y lo trae para crear impresiones falsas. Todo

es muy triste; por Mamita, por mis sobrinos, nietos de él hoy enteramente abandonados, y por mí. Espero no lleguen a tí en la forma interna, en que a nosotros llegan las amarguras de las intrigas que se vienen perfilando. Me condolería sobremanera haber contribuido a hacerte el daño de que ahora eres también víctima.

Un abrazo y queda como siempre agradecido y apenado por los sinsabores a que sé te dejo expuesto. Antes de partir, he dirigido un memorándum a los ejecutivos, pero a tí particularmente, he querido escribirte esta carta, contándote los motivos que dan lugar a la misma.

Afectuosamente,

(Fdo.)  Guillermo Cintrón Ayuso"

En su quinta conclusión de hecho adicional dijo el juez sentenciador:

"5.—Que durante los tres primeros meses en que el demandante efectuó sus labores la Sra. Ayuso no intervino con él, ni con las funciones de éste, pero, pasados los mencionados tres meses comenzó a intervenir con los redactores bajo la dirección del demandante y en la labor de la dirección, dando motivo a que el demandante protestara de dicha intervención tanto ante ella como ante el Vice-Presidente Ejecutivo, Sr. Guillermo Cintrón Ayuso y el presidente, Sr. Héctor Cintrón Ayuso."

Después de conocerse todo ello, es fácil entender por qué el señor Miranda, director real y efectivo del periódico, tenía que relacionar en términos vehementes y enérgicos la crítica situación creada en la empresa editorial por la señora Mieres de Ayuso y otras personas bajo sus órdenes.

La violación del contrato de servicios no estuvo en forma alguna justificada. El primer error fue cometido.

—II—

En su tercera conclusión de derecho el tribunal recurrido determinó que "La negativa del Sr. Luis Antonio Miranda a

reconocerle autoridad a la Junta Editorial del periódico 'El Imparcial' equivale a un incumplimiento del contrato por su parte. Su conducta es equivalente a una actitud de insubordinación y desobediencia a las normas establecidas en el propio contrato y justifican a su patrono en dar por terminado el mismo."

En su carta del 19 de junio de 1968, el recurrente hace mención de una convocatoria cursada por la señora Mieres para reunirse el 12 de junio de 1968. Se refiere él a "una llamada reunión de la nunca constituida 'Junta Editorial El Imparcial' " y dice en esa carta que "Me propuse asistir a esa reunión para . . . impugnar su legalidad, por las mismas razones que una vez expusiera el Lic. Félix Ochoteco—y que eran de conocimiento suyo— . . . ."

Empero, el propio tribunal recurrido, en su posterior y cuarta conclusión adicional, determinó:

"4.—Que mientras el demandante ocupó el cargo, ni la Junta de Directores ni la Junta de Accionistas del Editorial El Imparcial Inc. se reunió, ni existe acuerdo alguno según las actas de la corporación por la que se creara la mencionada Junta Editorial interesada por la Sra. Iris Mieres de Ayuso, siendo la única alusión de dicha Junta Editorial la contenida en la Carta-Contrato de fecha 26 de julio de 1967, a que el Tribunal se ha referido en sus anteriores conclusiones."

Esta terminante conclusión adicional desvirtuó por completo el significado, valor y efectos jurídicos que se le pudieran atribuir a la tercera conclusión de derecho original impugnada en el segundo error. Conforme a esa conclusión adicional la Junta Editorial, aunque mencionada en la carta-contrato, era una entidad jurídicamente inexistente y, con razón más que sobrada, el recurrente hubiera podido impugnar su inexistencia y su incapacidad absoluta para obrar eficazmente. Hasta no haberse creado en forma de ley, nadie estaba autorizado para actuar en su nombre.

A juicio nuestro mediante esa cuarta conclusión adicional el propio tribunal recurrido subsanó el error que implicaba la original tercera conclusión de derecho.

—III—

El demandante ofreció en evidencia cuatro cartas dirigidas a él en 22 de julio y 3 de diciembre de 1967 y 1ro. de marzo y 14 de mayo de 1968, por el Lic. Guillermo Cintrón Ayuso, Vicepresidente de la Editorial El Imparcial, Inc., Administrador General de la misma, sobrino del esposo de la codemandada Sra. Mieres, y persona que había estado presente al convenirse oralmente el contrato de servicios profesionales entre esa corporación y el demandante en la oficina del Lic. Félix Ochoteco en San Juan, el 21 de julio de 1967.

Lo acordado allí y entonces por ambas partes, no fue reducido a escrito. Sin embargo, uno de los concurrentes en el convenio, el Lic. Guillermo Cintrón Ayuso, al siguiente día, escribió la primera de esas cartas, en la que, además de referirse a determinadas situaciones del periódico, relacionó las condiciones acordadas por las partes en el contrato de servicios profesionales celebrado con el demandante. Esa carta surtía el efecto de conservar por escrito los términos del importante convenio para beneficio de ambas partes. Su autor partía hacia España al día siguiente.

Se aseguraba en dicha carta al demandante que, conforme a lo convenido, él tendría "absoluta autoridad sobre el personal a tu cargo y la libre dirección del periódico bajo las normas y características que estimes conveniente. . . ." Además le decía que según opinión del Lic. Ochoteco, la Junta Editorial tendría que crearla la Junta de Directores y que "te confirmo que serás el único jefe en la Dirección del periódico."

Empezó tres días después a trabajar el demandante en la dirección del periódico.

Luego de aceptar en el juicio como suya una de las firmas que aparecen en la llamada carta-contrato, de fecha 26 de julio de 1967, se le pidió al Sr. Miranda que explicara cómo fue que ese documento en forma de carta aparecía firmado por él y por qué.

Citamos, de las páginas 47–50 de la transcripción de evidencia, día 29 de julio de 1969, lo que sigue, en torno a la explicación que dio:

"P. ¿Podría usted explicarle a la Corte el conocimiento que usted tiene en relación con este documento y cómo fue que el mismo fue firmado por usted y por qué?

R. El día 26 de julio de 1967 después de estar yo trabajando en El Imparcial desde el día 24 con el contrato convenido en la oficina de Félix Ochoteco donde fue que se habló por primera vez de la Junta Editorial, llegó a mi oficina el Lic. Antonio Ayuso Valdivieso acompañado de su señora y del chofer. Traía en la mano una carta que era ésta, después averigué que era esa, y lo dejaron solo conmigo y Antonio me dio la carta. Yo la leí y me percaté inmediatamente de que traía la carta a colación lo de la Junta Editorial que había sido ventilado en la discusión en la oficina de Félix Ochoteco y a la que expresó Ochoteco que no podía constituirse tal Junta Editorial porque la Junta debía constituirla la Junta de Directores y no una persona en particular. Eso quedó definitivamente aclarado allí. . . . Entonces, al leer yo la carta me di cuenta de que se renovaba el deseo de formar la Junta Editorial de la que formará parte como Secretaria Iris Mieres de Ayuso. Pensé que se había acordado definitivamente por Ochoteco, y el Vice-Presidente que estaba presente en las discusiones en la oficina, era imposible la creación. . .

LIC. ORTIZ:

Objeción.

TESTIGO:

R. . . . por la razón de la incapacidad de Antonio . . .

LIC. ORTIZ:

Es contrario a la Junta Editorial, hay una disposición en el propio contrato.

HON. JUEZ:

El quiere explicar.

TESTIGO:

R. Entonces, me di cuenta de que lo único nuevo que hay en la carta a excepción de la discusión que hubo sobre mí, no entendía nada que no fuera la Junta de Directores y el Vice Presidente.

LIC. ORTIZ:

Objeción.

HON. JUEZ:

Sí, pero estamos en lo mismo. O sea, que anteriormente había habido una serie de conversaciones y después se firmó.

TESTIGO:

R. Al darme cuenta que era todo lo nuevo que había allí y de que Ochoteco me había convencido de que nadie intervendría conmigo yo no tuve inconveniente en firmar la carta y la firme."

Fundado en esas circunstancias, sostenía en juicio el demandante que los verdaderos pactos, condiciones y estipulaciones del contrato de servicios profesionales fueron convenidos el 21 de julio de 1967, en la oficina del Lic. Ochoteco, y que estaban fielmente reproducidos en la carta firmada por el Vicepresidente y Administrador General de la corporación y que la carta-contrato que él suscribió, de buena fe, días después de haber empezado a trabajar, no representaba la auténtica intención común de los contratantes. Para probar esa contención suya, fue que ofreció esas cartas y el testimonio oral del recurrente.

El juez sentenciador las rechazó como evidencia, por considerar que el único contrato entre las partes era el que contenía la citada carta-contrato y no podían variarse esos términos bajo el Art. 25 de la Ley de Evidencia.

No estamos conformes con ese rechazo. A nuestro parecer, bajo las condiciones y términos del debate ante sí, el tribunal a quo debió haber admitido esos documentos que tendían a demostrar lo verdaderamente acordado entre las partes y las circunstancias coetáneas o posteriores en que cada uno de los

convenios en disputa fue celebrado. El verdadero problema del juzgador no era solamente uno de interpretación de la carta-contrato sino cuál fue el contrato de servicios realmente convenido, si el celebrado entre el demandante y todos los directores y funcionarios de la corporación el 21 de julio de 1967, en la oficina del Lic. Ochoteco, o el contenido de la carta que suscribió el Sr. Miranda a petición de su antiguo amigo periodista el Lic. Antonio Ayuso Valdivieso. Todos los hechos circundantes a cada alegado contrato eran necesarios para determinar la auténtica intención común de ambas partes contratantes tratándose de un contrato bilateral y oneroso. En este tipo de contrato la intención común tiene prioridad sobre la unilateral.

■ En la situación específica del caso de autos, el Art. 25 no autorizaba la no admisión de esas cartas, al contrario, aun tratándose de un solo contrato, en el propio Art. 25 se dispone que el mismo "no excluye otra evidencia de circunstancias bajo las cuales fue hecho el convenio o con las cuales se relaciona."

Dispone también sobre la materia el Art. 28 de la Ley de Evidencia:

"Para la debida interpretación de un documento, las circunstancias bajo las cuales fuese otorgado, inclusa la situación del objeto a que se contrayere, así como la de las partes, podrán también demostrarse, a fin de que el juez se coloque en la situación de las personas cuyo lenguaje estuviere llamado a interpretar."

■ Conforme lo preceptúa el Art. 36, incisos 1 y 13, de la misma Ley, podrá presentarse en un juicio evidencia del hecho exacto en controversia y de cualesquiera otros hechos de los cuales los hechos en controversia se presumieren o pudieren lógicamente inferirse.

■ Por otra parte, nuestro Código Civil, sobre la interpretación de los contratos en su Art. 1234 dispone que para juzgar de la intención de los contratantes deberá atenderse

principalmente a los actos de éstos, coetáneos y posteriores al contrato.

■ ¿Por qué no admitir como evidencia en un litigio contra una corporación, fundado en los términos y condiciones de un contrato, las admisiones y declaraciones sobre los términos de dicho contrato, libre y espontáneamente, antes y después del mismo que hizo por escrito en nombre y representación de la corporación demandada el letrado Vicepresidente y Administrador General de ella, sobrino de su Presidente, que personalmente, y en unión a los demás funcionarios, discutió y aprobó los términos y condiciones del contrato?

Hemos analizado las varias decisiones continentales citadas por la parte recurrida. No existe semejanza alguna entre los hechos en ellas envueltos y los del caso de autos.

■ Reiteradamente hemos resuelto que el Art. 25 de la Ley de Evidencia no impide en todos los casos evidencia extrínseca, oral o escrita, sobre circunstancias que demuestren la existencia de determinadas condiciones previas del contrato o sobre la invalidez o inefectividad de pactos específicos del contrato. (4)

Después de todo, si ambas partes durante el juicio aceptaban que, sustancialmente, coincidían entre sí los términos y condiciones del contrato de servicios, tal y como los mismos eran expuestos por el Vicepresidente Lic. Cintrón Ayuso en su carta del 22 de julio de 1967 y tal y como aparecían en la carta-contrato del día 26 de ese mismo mes, con excepción de que se había desechado en el primero la idea de constituir la Junta Editorial, pero aparecía incluida en el segundo, y si de la prueba presentada por ambas partes resultó, y así lo determinó en sus conclusiones adicionales el tribunal a

---

(4) Véanse: *Rossy* v. *Tribunal Superior,* 80 D.P.R. 729 (1958); *Sucn. Marrero* v. *Santiago,* 74 D.P.R. 816 (1953); *Arias* v. *Torres,* 78 D.P.R. 187 (1955); *Ochoteco, Jr.* v. *Córdova,* 47 D.P.R. 554 (1934); *Rutledge* v. *Gill,* 78 D.P.R. 698 (1955); *Paracchini* v. *Vilá,* 23 D.P.R. 149 (1915).

quo, que tal Junta Editorial jamás tuvo existencia jurídica, y de la misma prueba resultó que don Antonio Ayuso Valdivieso entonces y desde el año 1965, sólo era o podía ser un director simbólico del periódico El Imparcial y que el auténtico y real director, desde el 22 de julio de 1967 hasta el día en que unilateralmente se invalidó el contrato, fue el señor Miranda, como cuestión práctica, ambos convenios resultaban igualmente obligatorios para ambas partes, y nada tenían de conflictivos entre sí. Las cosas o servicios imposibles, con arreglo al Art. 1224 de nuestro Código Civil, no podrán ser objeto de contrato.

—IV, V y VI—

Por considerar que la segunda causa de acción, en este caso particular, no procede, no discutiremos los señalamientos IV y V. Respecto al VI, debido a los términos generales en que se formula, tampoco lo discutiremos.

El recurrente siempre dio el debido cumplimiento a las obligaciones que el contrato de servicios le imponía. Quedó obviamente demostrado en juicio que el demandante señor Luis Antonio Miranda siempre ha sido una persona caballerosa y amable, de refinada condición humana; se ha dedicado con gran distinción al periodismo, en casi todos sus aspectos, durante muchos años; es un escritor de suma delicadeza y elegancia, un vigoroso intelectual de profunda cultura, cuyos méritos literarios, en las palabras del propio tribunal recurrido: "han sido ampliamente reconocidos en los círculos intelectuales de Puerto Rico y cuyo prestigio trasciende los límites geográficos de nuestra isla."

Desde el 24 de julio de 1967, en que comenzó a desempeñar la labor de director efectivo del periódico El Imparcial—por motivos de salud del simbólico director don Antonio

Ayuso Valdivieso—, (⁵) hasta el 25 de junio de 1968, en que por fíat de doña Iris ésta invalidó y violó el contrato de servicios dejándolo fuera del cargo de director, mejoró mucho la calidad del periódico, aumentó notablemente el beneficio de la empresa, su circulación y la demanda de espacios para anuncios comerciales e industriales.

Describió su labor en El Imparcial en los siguientes términos:

"R. Mi labor era en El Imparcial era una labor que empezó por ser labor de reorganización. Antes la redacción estaba en una situación terrible de crisis y tenía que empezar a organizar la estructura del periódico, tanto la estructura de la redacción como del periódico. Yo puedo hacer, si Vuestro Honor me lo permite, un pequeño relato cómo funcionaba.

.        .        .        .        .        .        .        .

Los periódicos tienen una redacción; es el taller donde se elabora el periódico. A ese taller llega toda la información de los redactores de la calle, de los redactores que trabajan en la redacción, otra persona que recibe por teletipo de la isla y teletipo internacional, va el material que se deja asignado al fotógrafo en determinadas asignaciones, van las colaboraciones de gente que envían artículos voluntariamente, llegan las colaboraciones de la gente a la que se le ha pedido la colaboración y llegan las colaboraciones que se compran a los sindicatos y las sesiones finales para el periódico, diversidad de tipo de secciones. Entonces, todo ese material que es el componente de la edición del periódico requiere un ayudante para el director que se llama 'Jefe de Redacción'. Yo específicamente nombré para ese cargo al Sr. Santiago Gálvez Maturana, que puedo decir que fue de gran ayuda para mí y él bregaba con las informaciones y cuando había alguna información controvertible con las mismas

---

(⁵) En su declaración, a preguntas de su abogado sobre quién era el que hacía el trabajo de la dirección del periódico como Director, el demandante afirmó: "El trabajo de Director lo hacía yo. Antonio no podía hacer ese trabajo".—pág. 61, Tr. Ev., sesión del 29 de julio de 1969. Esto mismo lo declaró la señora Mieres, aunque aclaraba que actuaba como Director en ausencia de su esposo. Pero esta ausencia, desde el 1965, parece que fue casi permanente, pues después de ese año sólo salía a dar unos paseos.

632

tenía que someterlas a mí, porque la aprobación final de la publicación era mía. Yo bregaba personalmente con todas las grandes colaboraciones, la columna, los artículos de sindicatos, los artículos que llegan a la redacción voluntariamente, los artículos que se solicitan para determinados escritores, y dictaba el editorial. Ofrecía los enfoques que fueran más constructivos para que el periódico tuviera la mejor calidad posible y mi labor era una labor de dedicación absoluta al periódico. Yo quiero establecer que en los once meses que estuve trabajando en el periódico no falté un solo día a mi trabajo. Llegaba al periódico a la hora en que comenzaba mi responsabilidad editorial y no me iba del periódico hasta que dejaba cerrada la edición, a las siete, ocho, once, y algunas veces las doce de la noche cuando estábamos esperando información local o internacional para saber decir luego la que iba a dar en primera plana. No cogí un solo día de vacaciones. Estuve en el periódico todos los días de los once meses, excepto el día de Año Nuevo que no había trabajo de ninguna clase."

No obstante esa ingente labor, su invariable y constante dedicación al servicio de la empresa editorial, desde octubre de 1967, la señora Mieres y el codemandado Littauer no observaron hacia él el mejor y más adecuado comportamiento.

Conforme al contrato de servicios real y jurídicamente celebrado con arreglo a la voluntad común de las partes—que consideramos fue el del 21 de julio de 1967, convenido oralmente en la oficina del Lic. Ochoteco y resumido al día siguiente en la carta del Lic. Guillermo Cintrón Ayuso—(6) la empresa codemandada, conforme lo preceptuado en los Arts. 1054 y 1057 de nuestro Código Civil y la doctrina sentada en *Villar & Co., Inc.* v. *Conde*, 37 D.P.R. 706 (1928), debe satisfacer al demandante todos los sueldos mensuales correspondientes al período comprendido entre el 1ro. de agosto de 1968 al 31 de julio de 1973, a razón de $1,300.00 por cada mes y, además, el interés legal devengado por el importe

(6) Y con arreglo también a la mencionada carta-contrato.

de cada sueldo mensual, desde que debió haberse pagado hasta que fuere totalmente satisfecho.

Se condena a la Editorial El Imparcial, Inc., al pago de $8,000.00 por honorarios de abogados de la parte demandante, más las costas ante el tribunal de instancia, incluyendo las causadas en el presente recurso de revisión.

*Se dictará sentencia revocando el fallo recurrido y declarando con lugar la demanda tan solo en cuanto a su primera causa de acción contra la Editorial El Imparcial, Inc., con arreglo a todo lo antes expuesto.*

El Juez Asociado Señor Hernández Matos y el ponente, Juez Asociado Señor Santana Becerra, son de opinión que también debió haber prosperado la segunda causa de acción.

El Juez Presidente Interino, Señor Pérez Pimentel y los Jueces Asociados Señores Rigau y Martínez Muñoz, no intervinieron.