(133 App. Div. 586.)

GREENWICH BANK OF CITY OF NEW YORK v. OPPENHEIM.

(Supreme Court, Appellate Division, First Department. July 13, 1909.)

1. FRAUDS, STATUTE OF (§ 23*)—PROMISE TO ANSWER FOR DEBT OF ANOTHER.

     A contract to indorse a note of one, provided that another will discount it, is not an original, but a collateral, promise to answer for the debt of another, which must be in writing under the statute of frauds.

     [Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. § 18; Dec. Dig. § 23.*]

2. FRAUDS, STATUTE OF (§ 103*)—SUFFICIENCY OF MEMORANDUM.

     A cablegram to a bank lending money on notes, as follows: "Will indorse ten thousand"—was not alone a sufficient memorandum within the statute of frauds to bind the sender as an indorser of the notes.

     [Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. § 199; Dec. Dig. § 103.*]

3. FRAUDS, STATUTE OF (§ 118*)—SUFFICIENCY OF WRITING.

     A member of a firm, desiring to borrow money at a bank, wrote O. in Europe that the firm needed money, and asked him to agree to indorse the firm's notes for $10,000, in addition to a $5,000 note which he had already indorsed, and which was shortly to become due, stating that all that was necessary to obtain the money was that O. should cable the bank that he would indorse to the amount of $15,000. O. cabled the bank: "Will indorse ten thousand." *Held*, that as the letter did not purport to be from the bank or written at its request, and the cablegram did not on its face refer to the letter nor purport to be an answer to it, nor accept any proposition contained in it, and was addressed directly to the bank, and not to the writer of the letter, the cablegram and letter taken together were not sufficient to constitute a contract in writing between the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

bank and O. to guaranty payment of the $10,000 lent the firm by the bank.

[Ed. Note.—For other cases, see Frauds, Statute of, Dec. Dig. § 118.*]

4. CONTRACTS (§ 24*)—ACCEPTANCE VARYING FROM OFFER.

Even if the letter and cablegram could be considered together as effecting a relation between the bank and O., they did not constitute a contract, since, assuming that the bank knew of the letter, it requested O. to agree to indorse notes to the extent of $15,000, including the $5,000 note already indorsed, and asked that he cable the bank that he would indorse to the amount of $15,000, while O. failed to comply with the proposition contained therein, but agreed to indorse to the amount of $10,000, which was a counter proposition, and did not constitute a contract, in the absence of an acceptance thereof by the bank.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 100–103; Dec. Dig. § 24.*]

5. CONTRACTS (§ 27*)—ACCEPTANCE—SUFFICIENCY.

There being no contract between O. and the bank by which O. was to indorse any notes or become liable for the firm's debts except on the note that he had already indorsed, the discount by the bank of other of the firm notes without notice to O. was not an acceptance of O.'s proposition.

[Ed. Note.—For other cases, see Contracts, Dec. Dig. § 27.*]

Appeal from Special Term, New York County.

Action by the Greenwich Bank of the City of New York against Albert D. Oppenheim. Judgment for plaintiff, and defendant appeals. Reversed, and new trial ordered.

Argued before INGRAHAM, CLARKE, HOUGHTON, Mc-LAUGHLIN, and SCOTT, JJ.

Benjamin N. Cardozo, for appellant.
Charles A. Decker, for respondent.

INGRAHAM, J. The defendant's son was a member of the firm of H. J. Hearn & Co. engaged in the dry goods business. On April 30, 1907, the defendant had indorsed for the accommodation of the firm a note for $5,000, which the plaintiff had discounted. Subsequently the defendant went to Europe, and on the 14th day of June following H. J. Hearn wrote him a letter, explaining the financial difficulties of the firm and the necessity for larger working capital, and that the firm must have at least $10,000 immediately, and reminding the defendant that he had said before he left that he had seen the people at the bank (manifestly referring to the plaintiff), and had stated that they would take care of the firm, and that the bank had refused to discount the firm's paper without the defendant's indorsement, but that with such indorsement the firm could have $15,000, and that all that was necessary to obtain the money for the firm was for the defendant to cable the bank that he would indorse to the amount of $15,000, which was to include the $5,000 already discounted. This letter was received by the defendant at Berlin on the 24th day of June, and he cabled the bank: "Will indorse ten thousand." Thereupon and in reliance upon such cablegram, but without defendant's actual indorsement and without communicating with defendant in any way, the plaintiff on the 26th day of June discounted the firm's note for $5,000, and on the 15th day of July following discounted another note of the firm for $5,000.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

On July 30th the note dated April 30th, which the defendant had indorsed, became due, and, without protesting it, the plaintiff accepted in place thereof a new note without defendant's indorsement made by the firm alone. The note of June 26th became due on September 26th, and before defendant returned from Europe, and plaintiff gave notice by mail to the defendant that it had been presented for payment which had been refused, and that plaintiff looked to him as guarantor for payment. On the 2d day of October an involuntary petition in bankruptcy was filed against the firm of H. J. Hearn & Co., and they were thereafter adjudged bankrupt. The defendant refused to indorse either of the notes discounted on receipt of his telegram, and this action is brought for damages for breach of his alleged contract to indorse, being the amount of the notes less about 20 per cent. dividends received in the bankruptcy proceedings. The plaintiff recovered judgment, from which the defendant appeals.

It is conceded that a contract to indorse a note of one, provided another will discount it, is a promise to answer for the debt of another, and therefore within the provisions of the statute of frauds. It was held in Carville v. Crane, 5 Hill, 483, 40 Am. Dec. 364, that such a promise is not an original one, but collateral, and one to answer for the debt of another, and hence must be in writing, and that case has been followed in this state. The cablegram sent by defendant to the plaintiff standing alone is not a sufficient memorandum to satisfy the statute of frauds. The first question is whether the letter written by Hearn to the defendant and the defendant's cable to the bank can be read together so as to make a contract between the parties. The cablegram does not on its face refer to the letter of Hearn to the defendant or purport to be an answer to that letter. It is addressed directly to the plaintiff, and not to Hearn, the writer of the letter. The letter itself does not purport to be from the plaintiff or written at its request, and, to connect the letter and the cablegram together, parol testimony is required; so that parol testimony is essential to make a valid contract. The cablegram on its face accepted no proposition contained in the letter, and I cannot therefore see how a letter from a third party to the defendant, with a cablegram from the defendant to the plaintiff, which on their face have no reference to each other, can be taken to be a contract in writing to indorse Hearn's notes. But, assuming that they can be taken together, I do not think there was any contract that could be enforced. The Hearn letter requested the defendant to agree to indorse notes to the extent of $15,000, including the $5,000 for which he was then an indorser upon a note which was shortly to become due. The defendant was asked in this letter to cable the plaintiff, "Will indorse to the amount of fifteen thousand dollars"; but the defendant failed to comply with that request. He did cable, "Will indorse ten thousand." There was no evidence that the plaintiff knew that the Hearn letter had been sent to the defendant, or that it had been made acquainted with its terms. But, if we assume that the bank knew of the letter, it must have known that the plaintiff had refused to accept the proposition contained in it, but had made a counter proposition to indorse for $10,000. Whether the indorsement for

$10,000 was to include the $5,000 note upon which the defendant was then liable as indorser is not stated. As the request to indorse for $15,000 was to include the note upon which he was already an indorser, it must be assumed that the defendant declined to be liable for more than $5,000 in addition to the $5,000 for which he was already liable. There was no acceptance of the original proposition, but an offer to indorse for a less sum, which, to make a contract between the plaintiff and the defendant, had to be accepted by the plaintiff. Neither in the letter nor in the cablegram was it stated what the defendant would indorse. The terms of the note or notes which he was to indorse are not stated, nor is the purpose of making the note stated. It seems to me clear that something more was required before there was any actual contract between the plaintiff and the defendant. The defendant, having refused to accept the proposition to indorse for $15,000 including the $5,000 for which he was then liable, made an offer to indorse for $10,000. Before that contract could become binding upon him, an acceptance at least was required, so that he could know that the bank had accepted his offer, and would look to him to indorse the notes which it was about to discount. He may have been willing to make an indorsement for the firm if its total liability would be the $5,000 for which he was already liable with an additional $5,000, but not willing to become responsible if its indebtedness was for more than that amount. He was at least entitled to know that the bank accepted his proposition, so that he could take necessary steps for his own protection. The discount by the bank of Hearn's notes without notice to the defendant was not an acceptance by the plaintiff of the defendant's proposition, as there was no contract between the plaintiff and the defendant by which the defendant was to indorse any notes or become liable for Hearn's indebtedness except on the note that he had already indorsed. I do not think, therefore, that there was ever a valid contract between the plaintiff and the defendant by which the defendant agreed to indorse these notes, and for that reason there was no liability.

The judgment should be reversed and a new trial ordered, with costs to the appellant to abide the event.

McLAUGHLIN, CLARKE, and SCOTT, JJ., concur.

HOUGHTON, J. I concur in a reversal of the judgment because there is no proof that the letter was written to the defendant in behalf of the plaintiff bank or by its authority or with its knowledge and assent. The cablegram alone not being a sufficient memorandum in writing to satisfy the statute of frauds, and it being necessary to read the letter in connection with it to constitute any contract at all, it became incumbent upon the plaintiff to show some relation to it before it could take the benefit of it and graft it onto the cablegram for the purpose of piecing out the incomplete agreement. I do not concur in the proposition, however, that, even if the plaintiff had proved that the letter was sent with its knowledge or acquiescence or at its suggestion, no binding contract would have been proven for the reason that the cablegram sent by the defendant was a mere proposal which

needed acceptance to make it binding. On the contrary, I think it was an acceptance to the extent of $10,000. The latter proposed that the defendant should indorse to the extent of $15,000 (which was to include $5,000 already indorsed), and requested that he cable the bank to that effect. He did cable, "Will indorse ten thousand." In effect he said, I will not indorse as much as $15,000, but I will indorse to the extent of $10,000. This was not a proposal. It was an acceptance of the proposition that he should indorse, but put a limit upon the amount. Treating it, however, as an acceptance, the plaintiff misinterpreted the cablegram as an agreement on the part of the defendant to indorse $10,000 in addition to the $5,000 which he had already indorsed. I think the $5,000 which the defendant had already indorsed must be counted as a part of the $10,000 which he assented to become liable for. At the utmost, therefore, the defendant would be liable only for one of the two $5,000 notes which were discounted by the plaintiff on the faith of the cablegram. When the note of April 30th became due, the plaintiff saw fit without protesting it so as to bind the defendant to take a new note in its place made by the firm alone and without the defendant's indorsement. This effectually released the defendant from any liability respecting this old note or the renewal taken in its place, for the taking of this renewal note cannot be claimed to have been in pursuance of the defendant's cablegram. Restricting the defendant's liability to $10,000 only (including the prior note which he had indorsed and which the plaintiff by its act released him from liability on), it would leave only one of the two remaining $5,000 notes upon which he would be liable in any event.

The note discounted July 15th did not become due until after the defendant returned from Europe, and learned that the plaintiff had acted upon his cablegram by granting the discounts. Assuming that the defendant is released from liability on the note discounted June 26th because it became due and the firm went into bankruptcy before he had any knowledge that the plaintiff had acted upon his cablegram, a different situation applies to the July 15th note because he had notice respecting that before it became due. As to that note, I think the plaintiff would be entitled to recover on connecting itself with the letter written to the defendant to which the cablegram was a response. Suggestion has been made that, even if the letter and cablegram be read together, the contract would be too indefinite to satisfy the statute of frauds as to the kind of paper the defendant agreed to indorse. I do not think this defect could be urged. The letter specifies immediate necessity for discount, and I think ordinary commercial paper running three or four months, such as the defendant had already indorsed for the firm, was fairly described in the letter, and can properly be read into the contract. The defendant evidently had had talk with the plaintiff respecting discounts for the firm of which his son was a member before his departure for Europe, and, although the plaintiff's name is not mentioned in the letter, he knew that "the bank" referred to was this plaintiff, for he addressed his cablegram to it. The cablegram which he sent induced the plaintiff to make further discounts for the accommodation of H. J. Hearn & Co. in reliance upon the defendant's responsibility.

While I concur in the reversal of the present judgment for the indicated defect in the proof, I do not think for the reasons which I have· endeavored to point out that the defendant can wholly .escape liability if such proof shall be supplied.

