KANSAS MILLING Co., demandante y apelante, *v.* ROYAL BANK OF CANADA, demandado y apelado.

Núm. 7278.—*Sometido:* Junio 17, 1937. *Resuelto:* Julio 28, 1937.

*R. Castro Fernández* y *J. López Baralt,* abogados de la apelante; *J H. Brown,* *G. E. González* y *Walter L. Newsom, Jr.,* abogados del apelado.

El Juez Asociado Señor Travieso emitió la opinión del tribunal.

Los hechos esenciales de este caso, extractados de la estipulación sometida por las partes, son los siguientes:

La corporación demandante vendió a la Yabucoa Bakery Co. 200 sacos de harina por el precio de $1,200. La harina fué consignada a la orden de la vendedora, con notificación de su llegada a la compradora.

En agosto 6, 1930, la demandante envió al Royal Bank of Canada en San Juan, para su cobro, un giro contra la Yabucoa Bakery Co. por $600; y en agosto 15 del mismo año le envió un segundo giro por igual suma. Ambos giros fueron extendidos a favor de la demandante y eran pagaderos a la vista y a la orden de la demandante, *por conducto del Royal Bank of Canada, San Juan.* (Through Royal Bank of Canada, San Juan.)

El banco demandado envió los dos giros y documentos a ellos anexos al Banco de Yabucoa, el cual los conservó en su poder hasta el 20 de octubre de 1930 en que los entregó a la Yabucoa Bakery Co., recibiendo de ésta la suma de $1,200, importe de los giros. El Banco de Yabucoa acreditó dicho cobro en sus libros a favor del banco demandado. En la tarde de ese mismo día el Banco de Yabucoa cerró sus puertas y fué puesto en liquidación judicial, sin que entregara al banco demandado el importe de dichos giros.

La demandante ha reclamado del demandado el pago de los dos giros, pero éste se ha negado a pagarlos, alegando no tener responsabilidad.

Cada uno de dichos giros llevaba anexo al mismo instrucciones impresas, entre las cuales figuraban las siguientes:

"Banco Colector, lea estas instrucciones cuidadosamente antes de hacerse cargo de los documentos anexos.

"El conocimiento o documentos anexos a este giro no deben ser separados ni entregados a ninguna otra persona que no sea el girado o su agente autorizado.

"

"Estas instrucciones podrán ser alteradas o cambiadas solamente por nuestra oficina de Wichita."

Alega la demandante que el Royal Bank of Canada no estaba autorizado para entregar los giros y documentos anexos al Banco de Yabucoa, y que al hacerlo así, desobedeciendo las instrucciones expresas arriba transcritas, incurrió en responsabilidad.

El banco demandado alega en su defensa que aceptó cobrar los dos giros de acuerdo con las condiciones impresas al dorso de la forma núm. 2 de los impresos que utiliza dicho banco para efectuar el cobro de giros; que tan pronto como recibió los dos giros remitió por correo a la Kansas Milling Co., por cada uno de dichos giros, una forma núm. 2 igual a la presentada como "Exhibit A" del demandado; y que el demandado nunca recibió objeción, reparo o protesta alguna de la demandante en cuanto a las mencionadas condiciones, las que copiadas de dicho "Exhibit A" dicen así: .

"CONDICIONES. Documentos no pagaderos en San Juan, Ponce o Mayagüez, son recibidos por nosotros para su cobro a riesgo de su dueño. Tales documentos serán 'enviados a nuestros agentes de cobro en los sitios donde los mismos fueren pagaderos, bajo el entendido de que este banco no asume responsabilidad por la negligencia o falta de pago de dichos agentes de cobro." The Royal Bank of Canada, San Juan, P. R.

La demandante negó haber recibido tales avisos, y el demandado sostuvo con la declaración de su Jefe de Cobranzas que dichos avisos habían sido remitidos por él personalmente, por correo, a la demandante.

Desde agosto 27 a octubre 15 de 1930, el Royal Bank of Canada envió semanalmente a la Kansas Milling Co. una nota informándole de la situación con respecto a los giros pendientes de cobro, en todas las cuales, al referirse a los dos giros envueltos en esta acción, le decía: "Doc. held pending payment," que traducimos: "Documento en nuestro poder pendiente de pago."

La demandante alega que por medio de esos avisos semanales el banco demandado indujo a la demandante a creer que los giros y los documentos anexos a los mismos estaban en poder del demandado.

Es un hecho admitido que en varias ocasiones anteriores a los hechos de este caso, la demandante envió al demandado, a su sucursal en San Juan, giros expedidos por la demandante a su favor y contra compradores de harina, y que esos giros fueron enviados por el demandado a bancos locales en distintos pueblos de la Isla, para ser cobrados y su importe remesado al demandado, el que a su vez lo remesó a la demandante.

También han admitido las partes litigantes que es costumbre bancaria establecida en Puerto Rico, *salvo casos de instrucciones específicas en contrario,* proceder al cobro de giros enviados a un banco de San Juan remitiendo éste los giros al banco local en el pueblo donde reside el girado, para su cobro y remesa al banco de San Juan, el que remite a su vez al librador después de deducir su comisión de cobro.

Sometido el caso a la Corte de Distrito de San Juan, ésta dictó sentencia desestimando la demanda. La demandante apeló.

En el primer señalamiento se imputa al tribunal inferior haber errado al decidir que el banco demandado no había incurrido en responsabilidad al entregar los documentos al Banco de Yabucoa, por haberlo hecho de acuerdo con las condiciones impresas al dorso del *Exhibit* "A" del demandado.

La primera cuestión que debemos considerar y resolver es: ¿Dónde eran pagaderos los dos giros envueltos en esta controversia? Siendo ambos del mismo tenor, transcribimos el primero, que lee así:

"B/L No. 1072. The Kansas Milling Company. No. 1572–C Car No. AT&SF 128766. Wichita, Kansas, August 6, 1930. At_____

Sight Pay to the Order of Ourselves $600.00 Six hundred and no/100 Dollars with exchange For value received, and charge to account of

Kansas Milling Company

Per W. C. Morehouse.

To Yabucoa Bakery Co.,
Yabucoa, P. R.

Through Royal Bank of Canada, San Juan.''

En el párrafo 4 de la estipulación de hechos se dice que los mencionados giros eran ''pagaderos a la vista y a la orden de la Kansas Milling Company *por conducto del Royal Bank of Canada, en San Juan, Puerto Rico.''* Y alega la apelante que por virtud de esa estipulación el demandado admitió que los giros eran pagaderos en San Juan. A eso replica el demandado que lo admitido por él fué que los giros eran pagaderos ''por conducto'' del banco demandado ''en San Juan, Puerto Rico.''

Si los giros eran pagaderos en San Juan, como sostiene la apelante, en ese caso las condiciones impresas al dorso del ''Exhibit A'' del demandado, supra, carecen en absoluto de importancia, toda vez que ellas se refieren exclusivamente a giros no pagaderos en San Juan, Ponce o Mayagüez. Si por el contrario, como sostiene el apelado, los giros eran pagaderos en Yabucoa, domicilio del girado, en ese caso tendremos que considerar (*a*) si la Kansas Milling Co. recibió y aceptó las mencionadas condiciones; (*b*) si el Banco demandado violó en alguna forma las instrucciones anexas a los giros; y (*c*) si el banco demandado estaba autorizado para proceder al cobro de los giros, no obstante las condiciones a los mismos anexas, de acuerdo con la práctica comercial establecida en Puerto Rico para el cobro de giros pagaderos fuera del domicilio del banco encargado de su cobro.

Creemos innecesario resolver si los giros eran pagaderos en San Juan o si lo eran en Yabucoa, porque tanto en un caso como en el otro nuestra decisión debe basarse en el efecto legal de las actuaciones de las partes con posterioridad al recibo de los giros por el Royal Bank of Canada. Ya hemos

visto que dichos giros iban acompañados de instrucciones específicas de que los documentos no debían ser entregados a ninguna otra persona que no fuera la Yabucoa Bakery Company. Esas instrucciones revelan, a nuestro juicio, el deseo de la corporación libradora de los giros de que las gestiones para su cobro fuesen practicadas y el importe recibido por el Royal Bank of Canada (Through the Royal Bank of Canada) sin la intervención de una tercera persona o agencia bancaria. Al recibir esas instrucciones, el Banco demandado acusó recibo de los documentos y al mismo tiempo envió a la Kansas Milling Company las condiciones bajo las cuales se comprometía a hacerse cargo del cobro de giros no pagaderos en San Juan.

■ La corte inferior resolvió que el depósito en el correo de la forma núm. 2, "Exhibit A del demandado," con las condiciones impresas al dorso, era suficiente para obligar a la demandante, pues debe presumirse que dicho documento fué recibido por la demandante, de acuerdo con lo dispuesto por el artículo 102, párr. 24, de la Ley de Evidencia.

No estamos conformes con las conclusiones de la corte inferior sobre este extremo. El documento "Exhibit A" no puede ser considerado como una aceptación incondicional de la proposición original de la Kansas Milling Co. Era en efecto una contraproposición, por la cual el banco demandado ofrecía a la Kansas Milling Co. hacerse cargo del cobro de los giros, no bajo las condiciones específicas a ellos anexas, sino bajo las condiciones impresas al dorso de la forma núm. 2, *Exhibit* "A" del demandado. Y tratándose de una aceptación condicional, de una contraoferta, no bastaba la presunción de su recibo por la demandante para que ésta quedase obligada por las nuevas condiciones. Era necesaria su aceptación por la demandante.

El artículo 85 del Código de Comercio, en el cual se basa la decisión de la corte inferior, dice:

"Los contratos que se celebren por correspondencia, quedarán perfeccionados desde que se conteste aceptando la propuesta o las condiciones con que ésta fuere modificada."

De la obra "Restatement of the Law of Contracts," primer volumen, página 66, copiamos lo siguiente:

"Sección 60.—*Supuesta aceptación que añade cualificaciones. —Una contestación a una oferta que, aun cuando parece aceptarla, añade cualificaciones o requiere el cumplimiento de condiciones, no es una aceptación sino una contraoferta.*

"*Comentario.—a.* Una aceptación cualificada o condicional es una contraoferta, pues tal aceptación es una expresión de un cambio que la persona que la hace está dispuesta a hacer, y que difiere de la oferta sometida por el proponente original. Una contraoferta es un rechazamiento de la oferta original. Una aceptación, sin embargo, no es ineficaz como tal simplemente porque es expresamente condicional, si el requisito de la condición fuese implícito en la oferta, aun cuando no estuviere en ella expresado."

Las instrucciones específicas anexas a los giros y las condiciones al dorso de la citada forma núm. 2 son contradictorias e incompatibles entre sí. El Banco demandado no podía obligar a la demandante a aceptar su contraoferta con sólo depositar en el correo una copia de la forma núm. 2 y descansar en la presunción de que el documento fué recibido por la demandante. La presunción de que una carta dirigida y cursada por correo debidamente, fué recibida en su oportunidad es una presunción disputable que puede ser controvertida mediante otra evidencia. La demandante ha controvertido esa presunción presentando en evidencia cartas dirigidas al demandado en las que niega haber recibido la referida forma núm. 2. A nuestro juicio la situación legal no variaría, si aceptáramos que la demandante recibió el referido documento, pues el recibo de la contraoferta no bastaba para cerrar el contrato entre las partes. Era necesaria la aceptación por la demandante de las nuevas condiciones impuestas por el demandado. Y esa aceptación no ha sido probada. Véanse: 13 C.J. 281; *Greenwich Bank* v. *Oppenheim,*

118 N.Y.S. 297; *Rushing* v. *Manhattan Life Ins. Co.*, 224 Fed. 74; *Minneapolis & St. Louis Railway* v. *Columbus Rolling Mill*, 119 U.S. 149.

█ El hecho de no haber contestado la Kansas Milling Company, aceptando o rechazando la contraoferta del Royal Bank of Canada, no puede ser interpretado como una aceptación de dicha contraoferta.. El silencio no equivale al consentimiento, a menos que la persona que recibe la oferta tenga el deber de contestar. Véase: 13 C.J. 276, nota 82.

██ El Banco demandado debió haber insistido en que la demandante acusara recibo de la referida forma núm. 2 y en que aceptara o rechazara la contraoferta en ella contenida, antes de proceder al cobro de los giros, mediante su entrega a otra persona que no era la Yabucoa Bakery Co., violando así las condiciones específicas anexas a los giros. Y no solamente no hizo eso el Banco demandado, sino que durante un período de cerca de dos meses—que era ampliamente suficiente para haber podido aclarar la situación—envió avisos semanales a la demandante dueña de los giros, informándole que los documentos estaban aún en su poder pendientes de pago, induciendo así a la demandante a creer que el banco demandado estaba ajustándose a las condiciones específicas anexas a los giros.

No creemos necesario discutir ni expresar preferencia por una u otra de las llamadas ''Regla de New York'' y ''Regla de Massachusetts,'' teniendo como tenemos estatutos locales reguladores de la materia. Nuestro Código Civil dispone:

''Artículo 1612.—El mandatario puede nombrar substituto si el mandante no se lo ha prohibido; pero responde de la gestión del substituto:

''1. Cuando no se le dió facultad para nombrarlo.

''2. Cuando se le dió esta facultad, pero sin designar la persona, y el nombrado era notoriamente incapaz o insolvente.''

En el caso de autos no solamente no se le dió facultad al Royal Bank of Canada para entregar los giros al Banco de

Yabucoa, sino que se prohibió expresamente que entregara los giros a cualquiera otra persona que no fuera la Yabucoa Bakery Co. No podemos interpretar las instrucciones específicas de la demandante más que como una prohibición expresa cuya violación hizo responsable al banco demandado de la gestión de su agente substituto.

La costumbre comercial establecida en Puerto Rico para el cobro de giros pagaderos fuera de San Juan, Ponce o Mayagüez no puede ser invocada en contra de un convenio expreso entre las partes o de instrucciones específicas dadas por el dueño de un giro, probablemente con el propósito de evitar que el banco elegido por él para efectuar el cobro procediera de acuerdo con la costumbre establecida, según la cual el dueño del giro asume la responsabilidad por la negligencia o falta de pago de los substitutos o subagentes.

Por las razones expuestas somos de opinión que al entregar los giros al Banco de Yabucoa, en contravención de las instrucciones específicas de la demandante, el Royal Bank of Canada asumió responsabilidad por la falta de pago del Banco de Yabucoa, su agente, y que *debe revocarse la sentencia apelada y condenarse al demandado a reintegrar a la demandante el importe de los dos giros, o sea la suma de $1,200, más intereses al 6 por ciento anual desde octubre 20, 1930, hasta su pago definitivo, más las costas, sin incluir en ellas honorarios de abogado.*

El Juez Asociado Señor Córdova Dávila no intervino.