Lilli Díaz de Diana et al., demandantes y recurridos, v. A. J. A. S. Insurance Company et al., demandados y peticionarios.

Número: O-79-467     Resuelto: 11 de diciembre de 1980

*Agrait & Oliveras,* abogados de la peticionaria; *Pedro M. Ortiz Ubiñas, Manuel De Jesús Mangual, José A. Lugo Irizarry, Héctor García Fernández* y *Paul Ramos Morales,* abogados de los recurridos.

EL JUEZ ASOCIADO SEÑOR IRIZARRY YUNQUÉ emitió la opinión del Tribunal.

Expedimos auto de *certiorari* para revisar resolución del Tribunal Superior, Sala de San Juan, que desestimó la defensa de prescripción opuesta por la parte demandada, aquí peticionaria, en relación con una demanda por daños y perjuicios causados al chocar un automóvil de Avis Rent A Car of Puerto Rico, Inc., con un automóvil conducido por la codemandante recurrida Lilli Díaz de Diana. Concluyó dicho tribunal que una carta enviada a la parte demandada interrumpió la prescripción, no empece la alegación y prueba de los demandados de que dicha carta no fue recibida. Se plantea,

pues, si una reclamación extrajudicial hecha por medio de una carta interrumpe la prescripción de una acción, no empece que se destruya la presunción de que la carta llegó a su destino. Resolvemos en la negativa. Resolvemos, además, que bajo los hechos aquí presentes, tampoco hubo por parte de los demandados acto alguno implicativo de reconocimiento de deuda interruptivo de la prescripción.

I

El accidente mencionado ocurrió el 2 de noviembre de 1972. Por alegados daños sufridos, la señora Díaz de Diana, su esposo, la sociedad legal de gananciales por ellos constituida, y dos hijos del matrimonio, menores de edad, instaron demanda el 4 de noviembre de 1976 contra Avis y su compañía aseguradora. En el párrafo cuarto de la demanda alegaron:

4. Que extrajudicialmente se ha venido bregando [*sic*] con este caso a través de comunicaciones escritas, 20 de febrero de 1973, 8 de febrero de 1974, 24 de julio de 1973 [*sic*], 15 de abril de 1974, noviembre de 1975 y 16 de marzo de 1976 sin haber podido llegar a una transacción.

En su contestación, los demandados admitieron la ocurrencia del accidente; negaron responsabilidad, o, en la alternativa, que la señora Díaz de Diana contribuyó con su negligencia a la ocurrencia del accidente; negaron los daños y, aunque admitieron que los demandantes les cursaron las cartas alegadas en el transcrito párrafo cuatro, opusieron la defensa afirmativa de prescripción de la acción, en cuanto a los cónyuges y la sociedad de gananciales demandantes.

Se celebró una vista para considerar la defensa especial de prescripción, en que las partes ofrecieron prueba testifical y documental. Quedó establecido que hubo correspondencia entre las partes con miras a un posible acuerdo transaccional. La controversia se centró en el período de diez y nueve meses comprendido entre el 15 de abril de 1974 y el 17 de noviembre

de 1975 en que, según los demandados, estuvo interrumpida toda correspondencia entre las partes. Los demandantes alegan, por su parte, que el período prescriptivo fue interrumpido con el envío de una carta por correo ordinario a los demandados el 12 de marzo de 1975, en la que reiteraban su reclamación. Los demandados niegan haber recibido dicha carta. El tribunal de instancia concluyó como cuestión de hecho que dicha carta fue enviada. No hizo determinación alguna sobre si fue recibida, y resolvió que el envío de la carta interrumpió la prescripción. No podemos estar de acuerdo. La prueba del envío crea a lo sumo la presunción controvertible de que fue recibida. Como veremos, aquí la presunción fue rebatida y no puede prevalecer.

## II

■ De conformidad con el Art. 1873 del Código Civil, 31 L.P.R.A. sec. 5303, la prescripción de las acciones se interrumpe por su ejercicio ante los tribunales, por reclamación extrajudicial del acreedor y por cualquier acto de reconocimiento de la deuda por el deudor.

■ Uno de los efectos de la interrupción de la prescripción es que el plazo prescriptivo debe comenzar a contarse de nuevo por entero. Díez Picazo, *La prescripción en el Código civil*, Barcelona, Ed. Bosch, 1964, pág. 138; Scaevola, *Código civil*, Madrid, Ed. Reus, 1965, T. XXXII, Vol. II, pág. 991; D. Espín, *Manual de Derecho civil español*, 5ta ed., Madrid, Ed. Revista de Derecho Privado, 1975, Vol. I, pág. 470 *ab initio;* Vázquez Bote, *Derecho civil de Puerto Rico*, San Juan, Ed. PAS, Ediciones Jurídicas, 1972, T. I, Vol. 2, pág. 538; G. Velázquez, *Las obligaciones según el Derecho puertorriqueño*, San Juan, Ed. Equity, 1964, sec. 472, pág. 253. *Feliciano* v. *A.A.A.*, 93 D.P.R. 655, 661 (1966).

La carta que los demandantes cursaron a los demandados el 15 de abril de 1974, que éstos admiten haber recibido, constituyó una reiteración extrajudicial de la reclamación de los

demandantes. A partir de esa fecha comenzó a correr un nuevo plazo prescriptivo de un año, que es el prescrito para la acción por daños causados por culpa o negligencia. Art. 1868 del Código Civil, 31 L.P.R.A. sec. 5298. Los demandados nada respondieron a este requerimiento. De resolverse que la alegada carta del 12 de marzo de 1975 constituía otro requerimiento extrajudicial a los demandados, se habría interrumpido el nuevo plazo que surgía con motivo de la carta del 15 de abril de 1974. De no resolverse así, la última carta de los demandantes, del 17 de noviembre de 1975, nada interrumpía, pues ya la acción estaba prescrita, y procedería desestimar las causas de acción de los cónyuges y la sociedad de gananciales demandantes, al ser así solicitado por los demandados.

█ La alegada carta del 12 de marzo de 1975, si es que fue remitida, no debe tener por ese solo hecho el efecto de interrumpir la prescripción, si la prueba demuestra que como cuestión de hecho no fue recibida. Este punto no ha sido resuelto antes por este Tribunal. Tampoco hemos hallado pronunciamiento alguno específico sobre el particular, de parte del Tribunal Supremo de España. La doctrina española, aunque ha sido poco expresiva sobre el problema, parece inclinarse hacia la solución que aquí exponemos.

█ Señala Castán, *Derecho civil español, común y foral,* 11ma ed., Madrid, Ed. Reus, 1971, T. I, Vol. II, pág. 848, que la reclamación extrajudicial del acreedor, "muy expuest[a] a inseguridades y dificultades de prueba, no está reconocid[a] por la generalidad de los Códigos extranjeros". Scaevola, *op. cit.,* supra, pág. 968, subraya la necesidad de que la reclamación extrajudicial sea probada para que surta efecto, y señala que aun probándola, no siempre la interrupción se produce. Albaladejo, *Derecho civil,* 3ra ed., Barcelona, Ed. Bosch, 1975, T. I, Vol. 2, pág. 473, se pronuncia en términos restrictivos sobre el alcance de la reclamación extrajudicial[1] y

___

[1] La jurisprudencia del Tribunal Supremo de España ha insistido en que, siendo una excepción a la extinción por prescripción, toda causa interrup-

pone énfasis en que sea eso, una reclamación, y no un mero recordatorio. En este marco, es Díez Picazo quien con precisión enfoca la cuestión aquí planteada. Luego de aclarar que el acto de interrupción de la prescripción extintiva mediante "reclamación extrajudicial del acreedor" no está limitado a los derechos de crédito y que aplica a todos los derechos prescriptibles, expresa en su citada obra, pág. 130:

Esto sentado, debemos preguntarnos en qué consiste este acto de reclamación extrajudicial. ¿Cuál es su naturaleza jurídica? Nuestro Código civil no ha dado a la palabra *"reclamación"* ningún significado preciso, ni técnico. Pero ello no nos exime de tratar de encontrarlo. Reclamación vale, en principio, tanto como exigencia o intimàción. Es decir: se trata de un acto por el cual el titular de un derecho subjetivo o de una facultad se dirige al sujeto pasivo de dicho derecho o de dicha facultad requiriéndole para que adopte el comportamiento debido. La reclamación es pues una pretensión en sentido técnico.

De aquí, Díez Picazo deduce la siguiente importante consecuencia, así denominada por él, que ahora adoptamos:

2o. La reclamación o pretensión es un acto de declaración de voluntad de naturaleza recepticia. Debe ser dirigido al sujeto pasivo del derecho *y debe ser recibido por éste*. De aquí que no pueda reconocerse eficacia interruptiva a los actos de afirmación de un derecho que no sean dirigidos al obligado o sujeto pasivo de la acción, sino a terceros, a personas distintas, a la generalidad.

Otro problema distinto consiste en determinar si es preciso que la reclamación llegue a ser efectivamente conocida por su destinatario o si basta que le sea dirigida y que el reclamante haya adoptado todas las medidas necesarias según una diligencia media a fin de que el conocimiento de la reclamación se produjera. Basta, a nuestro entender, esta última solución. Es, p. ej., suficiente demostrar que un *requerimiento ha llegado al domicilio*

tiva debe interpretarse restrictivamente. Véanse las Sentencias de 31 de diciembre de 1917, 19 de noviembre de 1941, 24 de abril de 1952, 8 de noviembre de 1958, 11 de febrero de 1966, 3 de mayo y 10 de octubre de 1972; y el artículo por Albaladejo, *Comentario al Artículo 1.973 del Código Civil*, Revista de Derecho Privado, págs. 987, 988 (1977).

*del requerido y ha sido entregado a las personas que con él con-*
*viven* (familiares, criados, etc.). (Énfasis nuestro.)

La razón de que el requerimiento se efectúe en condiciones óptimas que propicien su llegada a conocimiento del deudor nos parece obvia. Por una parte, si se prueba el recibo del requerimiento, se le da certeza al hecho de que se hizo tal requerimiento y al efecto interruptivo de la prescripción, hecho que corresponde probar satisfactoriamente al acreedor. Señalamos en *Feliciano* v. *A.A.A.*, supra, en la pág. 660, que "el fundamento reconocido de la interrupción es la *manifestación inequívoca* de quien, amenazado con la pérdida de su derecho, expresa su voluntad de no perderlo". (Énfasis nuestro.) Por otra parte, no puede ser efectivo un requerimiento del cual el requerido no tiene conocimiento.

En el citado caso de *Feliciano*, supra, resolvimos que la mera presentación de una demanda dentro del período de prescripción extintiva de la acción interrumpe dicho período, aunque el demandado no sea emplazado dentro del mismo. Es menester aclarar que en dicho caso se trataba de la interrupción "judicial" de la prescripción "por su ejercicio ante los tribunales", que dice el Art. 1873 antes transcrito. La acción judicial se ejercita cuando se insta la demanda. Distinto es el caso de la interrupción extrajudicial, en que no se ejercita acción alguna, requiriéndose que haya una reclamación al deudor. La reclamación no es efectiva si se hace en el vacío. Hay que hacerla al *deudor*. Es entonces cuando queda interrumpida extrajudicialmente la prescripción.

La parte demandante, para probar que la carta del 12 de marzo de 1975 fue recibida por los demandados, descansó en la presunción establecida por el Art. 102 de la entonces vigente Ley de Evidencia, Art. 464 del Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 1887, en su inciso 24, que establece, entre las presunciones disputables o controvertibles, la siguiente: "24. Que una carta dirigida y cursada por co-

rreo debidamente, fue recibida en su oportunidad".(²) Su problema es que dicha presunción fue rebatida satisfactoriamente por la parte demandada, aparte de que, como veremos, el hecho básico de la presunción, es decir, si la carta en cuestión fue enviada por los demandantes, es dubitable y sumamente frágil.

Los demandados presentaron prueba testifical que negó el recibo por ellos de la carta. Y presentaron, y el tribunal de instancia admitió, veintidós piezas de prueba documental que constituyen prácticamente todo su expediente sobre sus comunicaciones con los demandantes y los informes, numerados correlativamente del primero al decimotercero, en que la oficina de ajuste de seguros a que se dirigía la parte demandante informaba a Avis sobre el progreso y particulares en el desarrollo del caso. Son de especial interés los informes once, doce y trece. El número once, *Exhibit* 11-j, de 5 de diciembre de 1974, expresa:

Reference is made to yours of 11/12/1974 and ours dated 11/20/1974. Concerning the statute of limitations, the same was interrupted via claimant's attorney's letter received by this office. Last communication received from claimant's attorney was dated 4/15/1974. The statute will begin to run after that date, 4/15/1974 if it is not interrupted by the claimant's attorney.

El número doce, *Exhibit* 11-k, fechado a 1 de mayo de 1975, dice:

Since mine of 12/15/1974 neither claimant nor her attorney have written or called.

As I see it statute ran on April 15, 1974 [*sic*] based on attorney's last letter. Attorney should have filed suit before that date, and if I do not hear from him within the next 60 days, I will proceed to close my file.

Y el último *exhibit*, una carta de 16 de junio de 1975, (*Exhibit* 11-*l*), expresa:

---

(²)Esta presunción fue incorporada a las Reglas de Evidencia vigentes desde el 1 de octubre de 1979. Véase la Regla 16, inciso 24.

Since ours of 5/1/1975 there has been no agitation on this case. I am closing my file at this time.

El tribunal de instancia determinó que la carta de 12 de marzo de 1975 fue enviada, pero no hizo determinación alguna en el sentido de que hubiese sido recibida. Estamos en condiciones de hacer nuestra propia determinación sobre ello, por ser dicha prueba de naturaleza documental, lo que nos coloca en situación igual a la del tribunal de instancia. *Ortiz* v. *Cruz Pabón,* 103 D.P.R. 939, 947 (1975); *Planned Credit of P.R., Inc.* v. *Page,* 103 D.P.R. 245, 261–262 (1975); *Miranda* v. *Editorial El Imparcial, Inc.,* 99 D.P.R. 601, 618 (1971); *Ortiz Rodríguez* v. *A.F.F.,* 94 D.P.R. 546, 550 (1967); *Ramos Buist* v. *Sucn. Lloréns Torres,* 92 D.P.R. 451, 465 (1965); *Central Igualdad, Inc.* v. *Srio. Hacienda,* 83 D.P.R. 45, 52 (1961).

La prueba de la propia parte demandante recurrida crea dudas sobre si la carta de 12 de marzo de 1975 fue enviada. La falta de certeza del envío no nos permite concluir que fuera recibida por el destinatario. Nuestra sospecha queda confirmada por la última carta de los demandantes, de 16 de marzo de 1976, en la que se hace una relación de todas las cartas enviadas por éstos a la demandada, y se omite toda mención a la carta crítica de 12 de marzo de 1975. Allí se dice: "Con fecha de 8 de abril, 17 de mayo de 1974, noviembre de 1975 y el 2 de marzo de 1976, escribimos en relación al caso de epígrafe". Aún más, en el párrafo cuarto de la demanda, antes transcrito, alegaron los demandantes que cursaron a los demandados comunicaciones el 20 de febrero y 24 de julio de 1973, el 8 de febrero y 15 de abril de 1974, en noviembre de 1975 y el 16 de marzo de 1976. Es significativo que al hacer esa relación de cartas enviadas no se mencione la cuestionada carta del 12 de marzo de 1975 que es la que pudo haber interrumpido el período prescriptivo que comenzó el 15 de abril de 1974.

Es curioso, y a la vez significativo, que al plantear la

demandada la defensa de prescripción por primera vez, entonces los demandantes traen a colación su alegada carta de 12 de marzo de 1975, la que no había sido hasta entonces mencionada, y producen una copia a carbón de la misma. En el evento de que esa carta se hubiere remitido, faltando un mes para que transcurriera el plazo prescriptivo, es inexplicable que el abogado, consciente de su propósito de interrumpir dicho plazo, no hiciera mención de ella en su misiva. Para suplir su falta debió el abogado asegurarse de su recibo por los demandados y de contar con algún medio de prueba para establecer ese hecho cuando fuere menester.

## III

■ Aunque no fue planteado ante el tribunal de instancia, ni se ha planteado ante nos, parece oportuno considerar si en este caso se interrumpió la prescripción mediante "cualquier acto de reconocimiento de la deuda por el deudor", que es el tercer supuesto de interrupción de la prescripción de que habla el Art. 1873 del Código Civil, ya citado. No debe confundirse este medio de interrupción —el reconocimiento de la deuda— con el segundo medio, es decir, la reclamación extrajudicial. Son distintos, aunque ambos pueden coincidir en determinado caso. Así, puede haber una reclamación extrajudicial al deudor, y éste reconocer la deuda al serle hecha la reclamación. No puede concederse, sin embargo, como acto de reconocimiento de deuda las conversaciones y gestiones que sobre una posible transacción lleven a efecto las partes.

La regla sobre el alcance de conversaciones y ofertas de transacción fue expuesta desde principios de este siglo en *Colomé v. Guánica Centrale*, 16 D.P.R. 466, 469 (1910), y recogida en *Pérez v. Guánica Centrale*, 17 D.P.R. 963, 969 (1911), en el siguiente lenguaje: ". . . [El] hecho de que un litigante haga ofertas de transacción o de arreglo antes del pleito o durante su tramitación, nunca puede estimarse por sí solo como un reconocimiento de su responsabilidad, y a lo

sumo lo que significa es que desea evitar el pleito o su continuación, por lo que tal clase de prueba nunca debe ser permitida por los tribunales". Esta doctrina ha sido reiterada uniformemente. *Caraballo Ramírez* v. *Acosta*, 104 D.P.R. 474, 485 (1975); *Pueblo* v. *Ruiz*, 83 D.P.R. 349, 354 (1961); *Rodríguez* v. *Great Ame. Indemnity Co.*, 63 D.P.R. 605, 610 (1944); *Pueblo* v. *Central Cambalache*, 59 D.P.R. 60, 74 (1941); y *Díaz* v. *Arroyo*, 50 D.P.R. 319, 321–324 (1936). Dijimos en *Pueblo* v. *Ruiz*, supra, pág. 354:

> El verdadero fundamento que justifica la exclusión de evidencia sobre transacción de reclamaciones es que ordinariamente no constituyen una aceptación de que tal reclamación es legítima, sino la creencia de que la continuación del pleito o proceso causa molestias y trastornos que es preferible evitar. Según indica Wigmore, "la oferta meramente implica un deseo de lograr sosiego (*peace*), y no constituye una aceptación de que se ha incurrido en falta". Wigmore, *On Evidence,* 3a. ed. sec. 1061, pág. 28. Es por eso que el Estado, en su deseo de fomentar la paz entre los ciudadanos, alienta las transacciones. Hemos resuelto en repetidas ocasiones que prueba sobre negociaciones y ofertas de transacción no es admisible en pleitos civiles. (Citas omitidas.)

La norma fue finalmente recogida en la Núm. 22(b) de las Reglas de Evidencia adoptadas en 1979. Dice:

> (B) Transacciones. Evidencia de que una persona ha provisto, ofrecido o prometido proveer, o de que una persona ha aceptado u ofrecido o prometido aceptar, dinero o cualquier otra cosa para transar una reclamación no es admisible para probar responsabilidad ni para probar que la reclamación o parte de ésta no es válida. Tampoco es admisible evidencia de conducta o manifestaciones hechas en el curso de la negociación de la transacción. Esta regla no impide que ese tipo de evidencia sea admisible cuando se ofrece para otros propósitos.

■ Por otra parte, no podemos aceptar que memorandos o correspondencia interna entre un ajustador de seguros y la compañía aseguradora a la que representa, o entre éstos y el

asegurado, con respecto a un determinado accidente y su evaluación, constituya reconocimiento de deuda a los fines del Art. 1873 del Código Civil. Cierto que dicho artículo se refiere a "cualquier acto de reconocimiento de la deuda", pero esa frase no tiene tal alcance.

"El acto de reconocimiento de la deuda, que interrumpe la prescripción de acciones, debe hacerse al acreedor." J. Santamaría, *Comentarios al Código civil*, Madrid, Ed. Revista de Derecho Privado, 1958, Vol. II, pág. 1028. Opera "siempre que se pondere en orden a su carácter inequívoco, claro e integrante de la expresa conformidad del que lo hace con la vigencia de la deuda que tiene contraída. Nunca deduciéndolo de actos o conductas de los que sólo indirectamente y de forma dudosa pudiera desprenderse aquella conformidad con la absoluta eficacia del derecho contrario". Scaevola, *op. cit.*, T. XXXII, Vol. 2, pág. 978. Señala además Scaevola, más adelante en la misma página 978, que "el reconocimiento ha de ser espontáneo o directamente verificado por el deudor de un modo inicial y con [la] específica intención de reconocer la pervivencia de un derecho contrario . . .".

Díez Picazo, *op. cit.*, pág. 135, dice:

Configurado así el reconocimiento, se comprende enseguida, que sólo podrán ser esgrimidos, como actos de reconocimiento, por el dueño la declaración o la conducta dirigidas a él o aquéllas, que, sin estarlo de modo directo, sea razonable pensar que llegarán a él y le infundirán esa confianza que se trata de proteger.

En línea con estos principios fue que concluimos en *Vda. de Carlo* v. *Toro*, 99 D.P.R. 200, 210–214 (1970), que hubo reconocimientos de una deuda que interrumpieron la prescripción de la acción del acreedor para su cobro. Mediante la acción allí ejercitada, se trataba de ejecutar un crédito hipotecario vencido hacía más de veinte años. Concluimos que el período prescriptivo fue interrumpido por el deudor, cuando otorgó escritura en que vendió la finca hipotecada e hizo cons-

tar expresa y afirmativamente la subsistencia de la deuda, que también expresamente reconoció el comprador al retener el balance adeudado para pagarlo al acreedor, reconocimiento que repitió en escritura pública posterior el comprador al constituir una "segunda hipoteca" sobre la propiedad, reservando el carácter de crédito preferente al garantizado por la primera. Aparte de la formalidad que hay en toda escritura pública, ésta habría de surtir y surtió efectos registrales, al inscribirse en el Registro de la Propiedad antes del vencimiento del período prescriptivo. La publicidad que da el Registro era aviso suficiente del reconocimiento.

En el pleito que ahora nos ocupa, no hubo tal cosa como un reconocimiento de deuda. Hubo conversaciones transaccionales que se mantuvieron interrumpidas diez y nueve meses, período que excede el plazo prescriptivo de un año para el ejercicio de la acción por daños y perjuicios, que es la aquí ejercitada. Y hubo informes periódicos de un ajustador de seguros a la asegurada, en que se mantenía a ésta al tanto de la investigación y del progreso de las conversaciones de transacción. En ningún momento se hizo a los demandantes o a su abogado admisión alguna equivalente a un reconocimiento de responsabilidad.

Es de rigor señalar que considerar estos trámites como un reconocimiento de deuda, daría al traste con el propósito tantas veces enunciado de fomentar las transacciones para preservar la paz y evitar multiplicidad de pleitos.

*Por las precedentes consideraciones, se dictará sentencia que revoque la aquí recurrida y en su lugar ordene la desestimación de la demanda, por prescripción de las causas de acción, en cuanto concierne a los cónyuges demandantes y a la sociedad legal de gananciales por ellos constituida.*

El Juez Asociado Señor Rigau disintió con opinión.

—O—

Opinión disidente del Juez Asociado Señor Rigau.

San Juan, Puerto Rico, a 11 de diciembre de 1980

Lamento tener que disentir. Los hechos, en breve, son los siguientes. Avis Rent a Car of P.R., Inc., arrendó un automóvil a Wilhelm Schaaf, quien, mientras lo conducía, chocó por la parte trasera otro vehículo que conducía la demandante Lilli Díaz de Diana. El impacto le causó lesiones a ella y daños a su carro. El accidente ocurrió el 2 de noviembre de 1972. La fecha es tan lejana porque, como se verá, las comunicaciones entre la compañía aseguradora y la demandante fueron muchas y, mientras tanto, el tiempo transcurría. Situación bastante común en casos de esta naturaleza.

Se celebró vista en el tribunal de instancia para determinar si la acción estaba prescrita o no. Dicho tribunal resolvió en la negativa. Creo que resolvió bien.

En su Resolución el tribunal de instancia, tribunal que tuvo ante sí la prueba y a quien correspondía hacer las conclusiones sobre la misma, se expresó como sigue:

La demanda en el caso fue radicado [*sic*] en noviembre de 1976, respecto a hechos que se iniciaron en 2 de noviembre de 1972. De la prueba que hay en autos se desprende, fuera de controversia, que la parte actora realizó las siguientes gestiones extrajudiciales frente a la parte demandada en reclamación del derecho que se invoca en la demanda, en las siguientes fechas: 20 de febrero de 1973, 24 de julio de 1973, 8 de febrero de 1974, 15 de abril de 1974, 17 de noviembre de 1975, 2 de marzo de 1976 y 16 de marzo de 1976. En controversia est[á] una alegada reclamación por carta realizada por el abogado de la parte demandante con fecha de 12 de marzo de 1975. Si resultare que la referida reclamación de 12 de marzo de 1975 no se realizó, no habría duda de que la acción quedó prescrita allá para el día 16 de abril de 1975.

En 11 de mayo de 1979 se celebró una vista para la discusión de la cuestión en controversia y para el ofrecimiento por las partes de su respectiva prueba en apoyo de sus alegaciones, com-

pareciendo a la misma el Lcdo. Pedro M. Ortiz Ubiñas, en representación de la parte demandante y el Lcdo. Oronte Oliveras Sifre en representación de la parte demandada.

En la referida vista, la parte demandante, mediante el testimonio de su abogado, Lcdo. Manuel de Jesús Mangual, y el ofrecimiento de copia de una alegada carta de fecha 12 de marzo de 1975, alegadamente cursada por dicho letrado a la parte demandada, basó su contención respecto a la interrupción del término prescriptivo. La parte demandada, mediante el testimonio del señor Néstor Yiulfu, Supervisor de la co-demandada Anthony Lebrón Adjusting Service Insurance Company, negó que tal comunicación hubiera sido recibida por dicha parte.

El Tribunal, considerada con detenimiento la prueba de cada parte respecto a la cuestión en controversia, así como con vista a las múltiples gestiones realizadas por la parte demandante con anterioridad y con posterioridad a la fecha crítica en discusión, ha quedado convencido en el sentido de que efectivamente la reclamación contenida en la citada carta de 12 de marzo de 1975 fue cursada a la parte demandada y que el término prescriptivo quedó interrumpido, por lo cual declara sin lugar la cuestión formulada por la parte demandada.

Como vemos, el tribunal en su Resolución hace mención de que tuvo ante sí, entre otra evidencia, a dos testigos, el Lcdo. Manuel de Jesús Mangual, el que alegadamente cursó la carta del 12 de marzo de 1975 y el Sr. Néstor Yiulfu, Supervisor de la codemandada Anthony Lebrón Adjusting Service Insurance Company quien negó que tal comunicación hubiera sido recibida por dicha parte.

En *Ortiz* v. *Cruz Pabón*, 103 D.P.R. 939, 946–947 (1975), se dijo:

Es innecesario que hagamos aquí una relación de los numerosos casos en que hemos resuelto que, salvo en circunstancias extraordinarias, no alteraremos las conclusiones que sobre los hechos hiciera el tribunal sentenciador. Lo hemos hecho cuando el error en la apreciación de la prueba es manifiesto, o cuando hay base en los autos para concluir que el tribunal actuó movido por pasión, prejuicio o parcialidad. *C. Brewer P.R., Inc.* v. *Rodríguez,* 100 D.P.R. 826 (1972); *Ortiz Rodríguez* v. *A.F.F.,*

94 D.P.R. 546 (1967); *Sanabria* v. *Sucn. González*, 82 D.P.R. 885 (1961); *Morales* v. *Tribunal Superior*, 84 D.P.R. 123, 130 (1961). Ninguna de dichas excepciones es aquí aplicable.

"La verdad es que el testigo debe ser oído, y visto, interrogado y mirado." Así se expresa el eminente procesalista Carnelutti en su obra *Rivista di Diritto processuale civile*, año 1929. Don Alfonso de Paula Pérez, *La prueba de testigos en el proceso civil español* [Madrid, Ed. Reus, 1968, pág. 199], añade: "[y] es que no sólo habla la voz viva. También hablan las expresiones mímicas: el color de las mejillas, los ojos, el temblor o consistencia de la voz, los movimientos, el vocabulario no habitual del testigo, son otras tantas circunstancias que deben acompañar el conjunto de una declaración testifical. Y, sin embargo, todos estos elementos se pierden en la letra muda de las actas, por lo que se priva al Juez de otras tantas circunstancias que han de valerle incluso más que el texto de la declaración misma para el juicio valorativo que ha de emitir en el momento de fallar: le faltará el instrumento más útil para la investigación de la verdad: la observación."

No debemos pasar por alto que un abogado, por ser abogado, no tiene que merecerle a un tribunal más crédito que el que pueda merecerle cualquier ciudadano. *Ortiz* v. *Cruz Pabón*, supra. Pero en este caso el tribunal de instancia dio más credibilidad al Lcdo. Manuel de Jesús Mangual que al Sr. Néstor Yiulfu y, no existiendo error manifiesto en la apreciación ni habiendo base para concluir que el tribunal actuó movido por pasión, prejuicio o parcialidad, entiendo que no debemos alterar sus conclusiones.

Se argumenta en la opinión mayoritaria que es dudoso que la carta del 12 de marzo de 1975 fuese enviada en vista de que la misma no se mencionó en la demanda. Si comparamos las seis fechas de las cartas mencionadas en el inciso 4 de la demanda[1] con las cuatro que se mencionan en la carta enviada por los demandantes el 16 de marzo de 1976[2] y

---

[1] 20 de febrero de 1973; 24 de julio de 1973; 8 de febrero de 1974; 15 de abril de 1974; noviembre de 1975 y 16 de marzo de 1976.

[2] 8 de abril, 17 mayo de 1974; noviembre de 1975 y 2 de marzo de 1976.

con las siete fechas que determinó el tribunal de instancia, (³) observamos que sólo una fecha de las mencionadas en la carta del 16 de marzo de 1976 coincide con las fechas alegadas en la demanda y con las que encuentra el tribunal de instancia que no había disputa, la de noviembre de 1975. Luego de examinar esta disparidad en la mención de fechas por parte del demandante, podemos decir que la misma se debe a la propia culpa de la compañía aseguradora que ha tardado aproximadamente ocho años para resolver la presente reclamación, obligando a los demandantes a recurrir a la vía judicial para hacer valer sus derechos.

Otro aspecto que menciona la opinión mayoritaria es que "[l]a alegada carta del 12 de marzo de 1975, si es que fue remitida, no debe tener por ese solo hecho [de la remisión] el efecto de interrumpir la prescripción . . ."; y añade: "[e]ste punto no ha sido resuelto antes por este Tribunal". No veo cómo el resolver este problema nos pueda traer alguna dificultad en Puerto Rico; los tribunales no podemos exigirle a los individuos que luego de depositar una carta en una oficina de correos, lugar cuya encomienda principal es manejar la correspondencia postal, estén éstos obligados a supervisar el curso tomado por dicha carta. En Puerto Rico se presume que los deberes de un cargo, como el de funcionario del correo, han sido cumplidos con regularidad, Art. 464 del Código de Enjuiciamiento Civil, inciso 15 (32 L.P.R.A. sec. 1887), Ley de Evidencia y que la ley ha sido acatada por dicho funcionario. Art. 464 del Código de Enjuiciamiento Civil, inciso 32 (32 L.P.R.A. sec. 1887), *supra.*

No podemos pretender que toda persona que tenga una reclamación contra una compañía de seguros efectúe sus requerimientos por medio y en condiciones óptimas, como si estuviera preparando un expediente para un caso en los tribu-

---

(³)20 de febrero de 1973; 24 de julio de 1973; 8 de febrero de 1974; 15 de abril de 1974; 17 de noviembre de 1975; 2 de marzo de 1976 y 16 de marzo de 1976.

nales. La persona que tiene una reclamación de este tipo y está en la mejor disposición de transigir la misma no actúa de esa forma y sí pensando en la buena fe de las partes. Debemos tener presente que una cosa es buscar de buena fe una transacción con el asegurador y esperar tres, cuatro o hasta más años para resolver el asunto, y otra cosa es remitir comunicaciones con acuse de recibo, para prepararse para un pleito. Lo que hace la opinión mayoritaria es obligar a los reclamantes a comunicarse con su compañía de seguros y, a la misma vez, prepararse para un pleito en los tribunales, a final de cuentas. Como muy acertadamente nos señala la opinión mayoritaria, lo que significan los efectos de transacción es que se desea evitar el pleito o su continuación y no promoverlo.

La parte demandante, para probar que su acción no estaba prescrita, se ampara en que la carta del 12 de marzo fue enviada y que según el estado de derecho para la fecha del pleito e igualmente en el presente, se presume que una carta dirigida y cursada por correo debidamente, fue recibida en su oportunidad. (⁴)

Este inciso 24 del Art. 464 del Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 1887, tiene su origen en el inciso 24 del Art. 1963 del Código de Enjuiciamiento Civil de California, el cual fue derogado en California por Stats. 1965, c. 299, p. 1363, sec. 110, efectivo al 17 de septiembre de 1965. En *Tremayne* v. *American SMW Corp.*, 271 P.2d 229 (1954), 125 C.A.2d 852 (1954), se planteó una situación similar a la aquí presente. Se discutía si se había cancelado una póliza de seguros o no; la compañía de seguros alegaba que ella había cancelado la póliza y que le había notificado al asegurado por medio del correo. El asegurado planteaba que él en ningún momento había recibido dicha comunicación. El tribunal de instancia, luego de oír la declaración de un testigo

---

(⁴) Art. 102 de la entonces vigente Ley de Evidencia, Art. 464 del Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 1887(24).

de cada parte, resolvió que la póliza no se había cancelado. El demandado recurrió y el Tribunal en revisión resolvió que la presunción de que una carta dirigida y cursada por correo debidamente fue recibida en su oportunidad no es una presunción concluyente y puede ser rebatida con evidencia satisfactoria en contrario, *pero es una cuestión de hecho para ser resuelta por el tribunal,* tomando en consideración la evidencia presentada para tal fin.(5) Finalmente, el Tribunal concluyó que la evidencia de cómo se recibió la correspondencia por el demandante había rebatido dicha presunción y procedió a confirmar la determinación del juez de instancia.

En el caso de autos, el tribunal de instancia consideró que la prueba presentada por la compañía de seguros fue insuficiente, por tanto la presunción no quedó rebatida y continuó con toda su fuerza y vigor. Para llegar a esta determinación, el tribunal tuvo ante sí la declaración de los testigos de ambas partes y la copia a carbón de la carta del 12 de marzo de 1975.

En las determinaciones de hecho que hizo el tribunal de instancia, que copiamos al comienzo de esta opinión, se dice: "El Tribunal . . . ha quedado convencido en el sentido de que efectivamente la reclamación contenida en la citada carta de 12 de marzo de 1975 fue cursada a la parte demandada y *que el término prescriptivo quedó interrumpido . . .*". (Énfasis suplido.) Con esta determinación de hecho, la opinión mayoritaria señala que el tribunal de instancia no hizo determinación alguna en el sentido de que la referida carta hubiese sido recibida. Entiendo que cuando el tribunal de instancia habla de que "el término prescriptivo, quedó interrumpido" hizo la determinación de que la carta fue recibida, por ser lo razonable, luego que la parte demandada no pudo rebatir la presun-

---

(5) Véanse, además, *Despiáu* v. *Pérez,* 76 D.P.R. 123 (1954); *Kansas Milling Co.* v. *Royal Bank of Canada,* 52 D.P.R. 101 (1937); *Department of Social Welfare* v. *Gandy,* 132 P.2d 241 (1942); *Grade* v. *Mariposa County,* 132 Cal. 75, 76 (1901), 64 P. 117 (1901); *Frieden* v. *Cluett, Peabody & Co.,* 142 Va. 738 (1925), 128 S.E. 61, 64 (1925); *McFerren* v. *Goldsmith-Stern Co.,* 137 Md. 573 (1921), 113 A. 107, 109 (1921), 18 A.L.R. 1125.

ción de la Ley de Evidencia. Habiendo hecho el tribunal de instancia dicha determinación, no corresponde a este Tribunal pasar juicio sobre la misma, pasando sobre lo señalado en *Ortiz* v. *Cruz Pabón*, supra, puesto que no está involucrada tan solo evidencia documental, como dice la opinión mayoritaria, sino también evidencia testifical.

Finalmente, queremos señalar que concedemos que hubo oportunidad para fabricar prueba, pero esto no es motivo para que resolvamos contrario a derecho.

Por los motivos antes expuestos, yo confirmaría la sentencia recurrida.